[Civ. No. 18628. Fourth Dist., Div. One. Sept. 11, 1979.]

NEW LINEN SUPPLY, Plaintiff and Respondent, v.
EASTERN ENVIRONMENTAL CONTROLS, INC., et al.,
Defendants and Appellants.

[Civ. No. 18630. Fourth Dist., Div. One. Sept. 11, 1979.]

EASTERN ENVIRONMENTAL CONTROLS, INC., et al., Petitioners,
v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
NEW LINEN SUPPLY et al., Real Parties in Interest.

**COUNSEL**

Procopio, Cory, Hargreaves & Savitch, John C. Malugen and Richard H. Benes for Defendants and Appellants and Petitioners.

Klitgaard & Jones, Jerry M. Cannon and Robert J. Klitgaard for Plaintiff and Respondent and Real Parties in Interest.

No appearance for Respondent in No. 18630.

**OPINION**

**WIENER, J.**—Plaintiff New Linen Supply, a California corporation doing business as Western Environmental Engineering (Western) filed an action for unfair competition against defendants George H. Lerg II (Lerg), a former officer and director of Western, Eastern Environmental Controls, Inc., a Maryland corporation (EEC) and its president, Daniel C. Pavon (Pavon), involving the alleged wrongful termination of plaintiff's distributorship of EEC's products. EEC moved to stay the proceedings and petitioned the court for an order compelling arbitration. The motion

and petition were denied on the ground that petitioner had unreasonably delayed its request for arbitration and, therefore, waived its right to arbitrate. EEC and Pavon appeal the order denying arbitration and dismissing the proceedings. We reverse with instructions to the trial court to order arbitration between Western and defendants EEC and Pavon in accordance with the rules of the American Arbitration Association (AAA),[1] the place of the arbitration to be determined by the trial court after an evidentiary hearing restricted to the issue of whether it is unreasonable for the arbitration to occur in Chestertown, Maryland.

*Facts*

On June 27, 1977, EEC and Western entered into a written "Distributor Agreement," in which Western was appointed as exclusive distributor in California for sewage treatment plants manufactured by EEC. Similar agreements were executed for Washington, Oregon, Nevada and Mexico. Each agreement required Western to actively promote the sale and distribution of EEC plants in the described territory with the right to appoint subdistributors, dealers and salesmen to sell sewage treatment plants on its behalf provided Western's performance met the standards established by EEC. Paragraph 16 of the agreement provided: "In the event of a dispute, the parties agree to abide by the rules of the American Arbitration Association, and the jurisdiction for said arbitration shall be Chestertown, Maryland. All legal fees, experts and expenses related to the Arbitration shall be paid by the party losing said Arbitration."

The business dealings between the parties which presumably had been mutually satisfactory from approximately June of 1974 deteriorated rapidly after the contracts were signed. Their exchange of letters is reflective of their respective attitudes. In its letter of August 24, 1977, EEC made clear that unless Western took care of its overdue bills within 30 days, EEC would "have to consider our contract null and void" and on October 8, 1977, EEC wrote Western it was ". . . obliged to cancel the present contracts with [you] . . ." although it was ". . . ready at once to negotiate a new contract with you covering a dealership in part of California on the condition that you bring Western up to date on payments currently owed. . . ." Western responded by acknowledging EEC's letter of cancellation and requested the matter of distributorship agreements be submitted to the AAA. No formal action as required by

---

[1]Pavon, individually, was not a party to the arbitration agreement. However, he has agreed to participate in the arbitration proceedings.

AAA rules was undertaken by either party and they continued to do business with each other. On December 16, 1977, EEC wrote to Western and stated: "We understand your continuing to do business with us to be a withdrawal of your request for arbitration, we look forward to working toward a new contract." Events between the parties which may have occurred after December 16, 1977, and before EEC was served with the complaint for unfair competition on July 31, 1978, are not part of the record. EEC filed its petition to compel arbitration and its motion to stay proceedings on October 13, 1978.

### EEC Did Not Waive Its Right to Arbitration

". . . [A]rbitration has become an accepted and favored method of resolving disputes [citations], praised by the courts as an expeditious and economical method of relieving overburdened civil calendars [citation]." (*Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 706-707 [131 Cal.Rptr. 882, 552 P.2d 1178].) The strong public policy in favor of arbitration and its relationship to the courts has most recently been expressed by the Legislature in establishing judicial arbitration to ". . . provide parties with a simplified and economical procedure for obtaining prompt and equitable resolution of their disputes." (Code Civ. Proc., § 1141.10, subd. (b)(1), added by Stats. 1978, ch. 743, § 2, p. 2303, operative July 1, 1979; Code Civ. Proc., § 1141.10 et seq.) ■ "Because arbitration is a highly favored means of settling such disputes, the courts have been admonished to 'closely scrutinize any allegation of waiver of such favored right' [citation], and to 'indulge every intendment to give effect to such proceedings.' [Citations.]" (*Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 189 [151 Cal.Rptr. 837, 588 P.2d 1261].)

■ Waiver of a contractual right to arbitration is ordinarily a question of fact and determination of this question, if supported by substantial evidence, is binding on an appellate court. (*Sawday* v. *Vista Irrigation Dist.* (1966) 64 Cal.2d 833, 836 [52 Cal.Rptr. 1, 415 P.2d 816].) There are no findings of fact or conclusions of law in this case. (See Code Civ. Proc., § 1291; cf. *Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 355, fn. 7 [133 Cal.Rptr. 775, 84 A.L.R.3d 343].) We examine the entire record to determine whether there is any evidence to support the necessary finding that the conduct by EEC was indicative of its intent to voluntarily give up its right to arbitration and that no other reasonable explanation of

its conduct is possible. (*Central Bank* v. *Superior Court* (1978) 81 Cal.App.3d 592, 600-601 [146 Cal.Rptr. 503].)

██ July 1977, when the parties first had difficulties, may not be used as the starting point to compute the delay for there is nothing in the record to support a finding contrary to that contained in the letters that EEC was hopeful that a new contract could be worked out and that the continuance of the business relationship was indicative of Western's withdrawal of its request for arbitration. At no time did Western take the necessary steps required under AAA rules to start arbitration proceedings. It was certainly reasonable for all parties to postpone formal dispute resolution mechanisms while they were attempting to amicably and informally settle their problems. The period from July 31, 1978, when EEC was served, to mid-October when EEC filed its motion to stay proceedings, is also not unreasonably long to result in a waiver of arbitration in the absence of other facts which would evidence prejudice to Western. (*Doers* v. *Golden Gate Bridge etc. Dist., supra*, 23 Cal.3d at p. 188, fn. 3.) The record is devoid of any evidence to support either an express or implied finding of prejudice.

The term "waiver," however, has also been used to describe the loss of the right to assert the arbitration provisions of a contract following a substantive violation or repudiation of the contract itself. (See Annot., Breach or Repudiation of Contract As Affecting Right to Enforce Arbitration Clause Therein (1970) 32 A.L.R.3d 377.) It is clear from EEC's letter of October 8, 1977, and its subsequent correspondence, that it intended to terminate all written contracts with Western. ██ Thus, the issue presented is whether once having declared the contracts terminated because of the alleged breach by Western, may it now invoke a provision within the contract requiring arbitration. This specific question was addressed in *Riess* v. *Murchison* (9th Cir. 1967) 384 F.2d 727, 733, in which the court was "faced with the difficult task of discerning the position that would presently be taken by the California courts in regard to appellants' allegations of repudiation." The *Riess* court, after a thorough discussion of the historical development of precedent, the applicable California authorities, including *Hanes* v. *Coffee* (1931) 212 Cal. 777 [300 P. 963], and the strong public policy favoring arbitration in California, concluded the California courts would resolve the question by adopting the rule that one who repudiates a contract containing an arbitration clause may nevertheless, under California law, claim the benefit of that clause by requiring arbitration. (*Reiss* v.

*Murchison, supra,* 384 F.2d at p. 735.) The discussion in *Reiss* is persuasive and we agree with its conclusion, particularly in light of later cases (*Madden* v. *Kaiser Foundation Hospitals, supra,* 17 Cal.3d 699; *Doers* v. *Golden Gate Bridge etc. Dist., supra,* 23 Cal.3d 180), in which our Supreme Court has again emphasized the significance and social utility of arbitration as a method of dispute resolution. It is tempting, and certainly human, to respond negatively to a party who, after terminating the contract in a unilateral fashion, perhaps even wrongfully, then elects to seek benefits under it. Although the sincerity of that party who now wishes arbitration, ostensibly to obtain the efficient, inexpensive and expeditious resolution of the controversy, may be questioned, the tactics involved may not be used as the rationale to deny arbitration as the means of resolving the controversy in the absence of actual prejudice. As was said in *Heyman* v. *Darwins, Ltd.* [1942] A.C. 356, 374-375: ". . . It is said to be wrong to allow a party to a contract who has refused to perform his obligations under it at the same time to insist on the observance of a clause of arbitration embodied in the contract. The doctrine of approbate and reprobate is said to forbid this. I appreciate the apparent dilemma, but with the greatest respect I venture to think it is based on a misapprehension. The key is to be found in the distinction which I have endeavoured to draw between the arbitration clause in a contract and the executive obligations undertaken by each party to the other. I can see nothing shocking or repugnant to law in one business man saying to another that he regrets he finds himself unable to go on with his deliveries under a contract between them and at the same time asking the other to join with him in a reference under an arbitration clause in their contract to ascertain what compensation is to be paid for his default."

A provision for arbitration, where voluntarily selected by the parties, does not conceptually favor one party over the other. The loss of that right should not turn on whether the breach of the contract is thought to be total or partial, nor should it turn on whether the action relating to the breach precedes or follows the request for arbitration. We conclude that EEC has not waived its right to arbitration because of unreasonable delay or because of its asserted repudiation of the contract. The instant case involves an issue different than that of *Bertero* v. *Superior Court* (1963) 216 Cal.App.2d 213 [30 Cal.Rptr. 719], in which the court held the right to arbitrate was lost where the party seeking the arbitration had previously asserted that no contract between the parties existed. In the present case, neither party has denied the existence of the contract in general or the arbitration clause in particular. The contract still exists—the questions for

resolution include the amount of damages arising from its alleged breach.

### The Arbitration Agreement Encompasses the Issues Involved in the Litigation

Western also contends the issues in the present litigation are not encompassed within the arbitration provision assuming the only issues that can be heard are those which arose after the contracts were signed and before notice of termination was sent. The provision, however, does not contain any limitation as to when the dispute must have arisen, referring solely to the occurrence of a dispute and the parties' willingness to abide by the rules of AAA. In the absence of language restricting the use of arbitration, we will not imply that its use was intended to be so limited.[2]

### Whether Transfer of the Arbitration to Maryland Is Unreasonable Requires a Hearing by the Trial Court

EEC urges our responsibility to assure literal performance of the arbitration provisions requires the arbitration proceeding to occur in Chestertown, Maryland. ■ "[F]orum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable." (*Smith, Valentino & Smith, Inc.* v. *Superior Court* (1976) 17 Cal.3d 491, 496 [131 Cal.Rptr. 374, 551 P.2d 1206].) Although on this record we are inclined to limit the arbitration proceedings to San Diego because a transfer to Maryland does appear to be unreasonable, there may be other facts which, when presented to the trial court, may require a different

---

[2]EEC sought relief in the superior court to compel arbitration pursuant to the California statute, Code of Civil Procedure section 1281.2. Throughout our decision we have made reference to California law. Paragraph 15 of the agreement provides: "The validity, interpretation, and performance of this Agreement shall be controlled by and construed under the laws of the State of Maryland. It is understood, however, that this is a general form of Agreement, designed for use in the United States wherever [Western] may desire to sell EEC plants and equipment and that any provision herein which in any way is held to contravene the laws of any state or jurisdiction shall be deemed not to be a part of this Agreement therein." Because the Maryland statute (Laws of Maryland (1973) Courts, §§ 3-201 to 3-234, § 12-303(c)(9)) providing for arbitration and its public policy towards arbitration is substantially the same as California (see *Bel Pre Med. Ctr., Inc.* v. *Frederick Contractors, Inc.* (1974) 21 Md.App. 307 [320 A.2d 558, 565]), it is not necessary to address the choice of law provision contained in the agreement. (See *Gamer* v. *DuPont Glore Forgan, Inc.* (1976) 65 Cal.App.3d 280, 287 [135 Cal.Rptr. 230].)

result. The considerations which strongly militate in favor of a finding that arbitration in Maryland is unreasonable include the following.

The purpose of arbitration is to have a simple, quick and efficient method to resolve controversies. The arbitration procedure, if conducted in accordance with AAA rules, is the same whether it occurs in Maryland or in California. The breaches by Western include its alleged failure to install EEC products in accordance with regulations promulgated and enforced by California regulatory agencies. Specifically, 11 of the 12 installations in California are alleged to be improper according to the joint report of the California Regional Quality Control Board and the San Diego County Department of Public Health. Speculation is not involved when the conclusion is drawn that witnesses who will be called upon to testify as to these events are all in California. In addition, the alleged actions of EEC relating to unfair competition also occurred in California. Specifically, the fraudulent sales practices of Western and the alleged confusion of EEC sewage treatment plants with the equipment of another manufacturer all occurred in this state. Presumably, witnesses who will be called upon to testify to all of these events are in California.

EEC sought arbitration under the applicable provisions of the Code of Civil Procedure by petitioning the superior court after Western's California suit had been filed. A California court, under Code of Civil Procedure section 1281.2, now has discretion to either refuse to order arbitration if there is another party to the litigation who is not a party to the arbitration agreement or stay the pending court action pending the outcome of the arbitration proceeding. Lerg, who is not a party to the arbitration agreement, is a defendant in the action for unfair competition filed by Western; he in turn has filed a cross-complaint against Western. These proceedings are now part of litigation now pending in the superior court. To assure prompt resolution of issues affecting all parties as those issues arise, it is sensible for the California court to retain sole control over the proceedings. To do otherwise will inevitably result in interstate delay with resultant frustration to the goal of prompt resolution of the controversy through arbitration.

Nevertheless, whether under all of the circumstances a transfer of the arbitration proceedings to Maryland would be unreasonable is best resolved after a factual hearing allowing both parties the opportunity to present evidence on this issue. If the court shall find the transfer is unreasonable, it may order the arbitration to occur in San Diego

(*Richards* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1976) 64 Cal.App.3d 899, 903 [135 Cal.Rptr. 26]) and may make such additional orders that may be necessary in reference to the litigation between Western and Lerg.

*Disposition*

The order denying arbitration is reversed. The trial court is instructed to enter an order requiring arbitration in accordance with AAA rules, the place of the arbitration to be determined by the trial court after an evidentiary hearing. Each party shall bear its own costs on appeal.

Staniforth, Acting P. J., and Focht, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.