412 So.2d 871 (1982)
POST TENSIONED ENGINEERING CORP. and Commercial Construction Corp., Petitioners,
v.
FAIRWAYS PLAZA ASSOCIATES, Respondent.
Nos. 81-2473, 81-2604.
District Court of Appeal of Florida, Third District.
March 9, 1982.
Rehearing Denied May 3, 1982.
*872 Mahoney, Hadlow & Valdes-Fauli and William L. Richey, Miami, Kent, Watts, Durden, Kent & Mickler and William G. Cooper, Jacksonville, for petitioners.
Fine, Jacobson, Block, Klein, Colan & Simon and Joseph H. Serota, Miami, for respondent.
Before SCHWARTZ, DANIEL S. PEARSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
Fairways Plaza Associates, the owner, filed suit against Commercial Construction Corporation, the contractor, and Commercial moved to compel arbitration pursuant to a contract which provides:
"7.9 ARBITRATION
"7.9.1 All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof ... shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise."
We review by writ of certiorari the trial court's denial of Commercial's motion.[1]
*873 In our view, the very issues Fairways seeks to resolve by litigation must be resolved in arbitration. First, Fairways' suit does not challenge the validity of the contract or its provision for arbitration, but instead, in full recognition of the contract, seeks damages for its breach. The Florida Arbitration Code, Section 682.03(1), Florida Statutes (1981), specifically provides:
"A party to an agreement or provision for arbitration subject to this law claiming the neglect or refusal of another party thereto to comply therewith may make application to the court for an order directing the parties to proceed with arbitration in accordance with the terms thereof. If the court is satisfied that no substantial issue exists as to the making of the agreement or provision, it shall grant the application. If the court shall find that a substantial issue is raised as to the making of the agreement or provision, it shall summarily hear and determine the issue and, according to its determination, shall grant or deny the application." (emphasis supplied).
Thus, the role of the court in deciding, ab initio, whether arbitration may be compelled is limited to determining whether an enforceable arbitration clause exists. See Comment, The Uniform Arbitration Act in Missouri, 46 Mo.L.Rev. 627, 634 (1981). See generally Annot., Violation or Repudiation of Contract as Affecting Right to Enforce Arbitration Clause Therein, 32 A.L.R.3d 377 (1970); compare Annot., 3 A.L.R.2d 383 (1959) (discussing earlier contrary rule and noting trend toward present rule). There being no challenge by Fairways to the making of the contract, much less the making of the included provision for arbitration, the unchallenged arbitration clause is valid,[2],[3] *874 regardless of the "justiciable character of the controversy."[4] It follows that an alleged breach of a valid contract does not forfeit the included agreement to arbitrate, but rather makes the question of breach one to be decided in arbitration. Gersh v. Concept House, Inc., 291 So.2d 258 (Fla.3d DCA 1974); Merkle v. Rice Construction Company, 271 So.2d 220 (Fla. 2d DCA 1973).
"[The] circuit court may not enjoin or stay an arbitration proceeding upon the ground that the contract providing for arbitration is not in force and effect, because of factual matters which have occurred since the making of the contract. Such an issue is for the arbitrators." Gersh v. Concept House, Inc., supra, at 259.
Second, though it is true that if the arbitration clause of the contract calls for arbitration to take place in a foreign jurisdiction, Florida courts cannot, over objection, compel arbitration, § 682.02, Fla. Stat. (1981); Damora v. Stresscon International, Inc., 324 So.2d 80 (Fla. 1975); Romar Transports Limited, Inc. v. Iron & Steel Company of Trinidad, 386 So.2d 572, 573 (Fla. 4th DCA 1980); see Murphey v. Dean Witter & Co., Inc., 392 So.2d 286 (Fla. 4th DCA 1980); Knight v. H.S. Equities, 280 So.2d 456 (Fla. 4th DCA 1973); the arbitration clause found in the contract between Fairways and Commercial,[5] which provides that arbitration shall be conducted under the rules of the American Arbitration Association, is considered one which merely expresses the method to be followed, not a choice to arbitrate in a foreign jurisdiction or a stipulation that the Florida Arbitration Code shall not apply. Hall v. Nationwide Mutual Insurance Co., 189 So.2d 224 (Fla. 4th DCA 1966). See Travelers Insurance Co. v. Luckett, 279 So.2d 885 n. 1 (Fla. 3d DCA 1973).
Having concluded that the arbitration clause is valid and enforceable, we now address Fairways' contention that Commercial waived its right to demand arbitration. The waiver, says Fairways, arises from Commercial's failure to bind its subcontractors to arbitration pursuant to its agreement with Fairways.[6] If Commercial's alleged failure is simply a breach of its contract with Fairways, then, as we have said, that breach does not affect Commercial's right to compel arbitration, but itself will be submitted to arbitration. Therefore, for Fairways to prevail on its contention, it must show that the alleged breach is an act inconsistent with Commercial's right to arbitration. See, e.g., Lapidus v. Arlen Beach Condominium Association, Inc., 394 So.2d 1102 (Fla. 3d DCA 1981). But even if, arguendo, Commercial elected not to arbitrate with its subcontractors, see n. 6, supra, that election is in no way inconsistent with Commercial's insistence on its right to arbitrate with Fairways. For an act to be inconsistent with the right to arbitrate and thus constitute a waiver of that right, it must repudiate the right of the party who does the act. See Lapidus v. Arlen Beach Condominium Association, Inc., supra, and cases collected therein. The most that can be said about Commercial's failure to bind its subcontractors to arbitration is that it might impinge *875 upon Fairways' ability to include these subcontractors in an arbitration proceeding, not upon Commercial's right to arbitrate with Fairways.
We reject as well Fairways' remaining arguments in defense of the trial court's ruling. Commercial's right to compel arbitration is unaffected by the fact that Fairways' complaint alleges fraud, Vic Potamkin Chevrolet, Inc. v. Bloom, 386 So.2d 286 (Fla. 3d DCA 1980); Raymond, James and Associates, Inc. v. Maves, 384 So.2d 716 (Fla. 2d DCA 1980); seeks equitable relief,[7]Collier Land Corporation v. Royal Palm Realty, Inc., 338 So.2d 859 (Fla. 3d DCA 1976); and concerns a complex construction industry dispute, William Passalacqua Builders, Inc. v. Mayfair House Association, Inc., 395 So.2d 1171 (Fla. 4th DCA 1981). Finally, and most emphatically, we reject Fairways' argument that because it has not only sued Commercial with which it has an agreement to arbitrate, but has sued and intends to sue others with which it has no such agreement, and with which, therefore, the dispute must be litigated in court, the threat of such "piecemeal" resolution of the multiple disputes is, ipso facto, sufficient to justify the denial of Commercial's motion to compel arbitration.[8] In light of the strong public policy favoring arbitration, Fenster v. Makovsky, 67 So.2d 427 (Fla. 1953); Arrieta v. Volkswagen Insurance Company, 343 So.2d 918 (Fla. 3d DCA 1977); Morton Z. Levine and Associates, Chartered v. Van Deree, 334 So.2d 287 (Fla. 2d DCA 1976); Siegel v. Abramowitz, 309 So.2d 234 (Fla. 4th DCA 1975), we cannot accept the proposition that a party to a contract calling for arbitration may avoid that undertaking by the simple device of joining as defendants in its lawsuit others with which the party has no such agreement to arbitrate.
There being no other basis for sustaining the trial court's order, the petition for writ of certiorari filed by Commercial Construction Corporation is granted, and the order of the trial court denying Commercial's motion to compel arbitration is quashed. The petition for writ of certiorari filed by Post Tensioned Engineering Corporation is dismissed.
NOTES
[1] Post Tensioned Engineering Corporation admits that it did not file a motion to compel arbitration and that its petition for writ of certiorari in Case No. 81-2473 seeking review of the trial court's order denying arbitration was filed out of concern that non-action might be deemed a waiver of arbitration. Given this, we dismiss Post Tensioned's petition for writ of certiorari.
[2] The plain language of Sections 682.02, .03 and .04, Florida Statutes (1981), refers to "an agreement or provision to arbitrate," not to the contract in its entirety. Thus, a challenge to the validity of the contract on the ground of fraud in the inducement, as distinguished from a challenge to the validity of the arbitration provision, has been held under the Federal arbitration statute (substantially similar to the Florida statute) to be subject to arbitration.

"Under [the Federal statute] ... the federal court is instructed to order arbitration to proceed once it is satisfied that `the making of the agreement for arbitration or the failure to comply [with the arbitration agreement] is not in issue.' Accordingly, if the claim is fraud in the inducement of the arbitration clause itself  an issue which goes to the `making' of the agreement to arbitrate  the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally... ." Prima Paint Corporation v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402, 87 S.Ct. 1801, 1805, 18 L.Ed.2d 1270, 1277 (1967).
See Quirk v. Data Terminal Systems, Inc., 379 Mass. 762, 400 N.E.2d 858, 861 (1980).
It would appear in the present case (absent any issue of waiver by Commercial), that the trial court's labor should have come to an end upon simple review of Fairways' complaint, which contains no attack on the validity of the arbitration provision. Had Fairways' complaint asserted that it was fraudulently induced by Commercial into agreeing to arbitrate by Commercial's promise to compel its subcontractors to arbitrate an issue cognizable by the court would have been presented.
[3] We read Sections 682.02, .03 and .04 as treating the arbitration provision of a contract as a separate contract as a matter of law. That being the case, "severability" or "separability," seemingly "an issue when one party challenges the validity of an entire contract, part of which is an agreement to arbitrate," see Comment, 46 Mo.L.Rev., supra, at 640, is not an issue in Florida. The other possible views concerning the relationship between arbitration clauses and the contracts to which they are appended are that (1) as a matter of law, the arbitration clause is part of the principal contract, and (2) whether the arbitration clause is a separate contract is a question of fact. See Note, Arbitration: ... Separability of Arbitration Clause As A Matter of Federal Law, 45 Cornell L.Q. 795, 800 (1960).

Thus, under the Florida or Federal view, only an attack on the making of the arbitration provision of the contract raises an issue for the court to decide. Under either of the other possible views, an attack on the making of the contract itself creates an issue for the court, and under the second of these views, the court must additionally decide the issue of separability.
[4] "[An agreement to arbitrate] shall be valid, enforceable and irrevocable without regard to the justiciable character of the controversy." § 682.02, Fla. Stat. (1981).
[5] Fairways points to a separate document, a purchase order, between Commercial and Post Tensioned Engineering Corporation, which provides:

"ARBITRATION  Supplier and Purchaser agree that any dispute arising from this order shall be submitted to the American Arbitration Association, New York City, in accordance with their rules and regulations...."
While it may be arguable that this constitutes an agreement between Commercial and Post Tensioned to arbitrate in New York, the agreement between them is irrelevant to Commercial's right to enforce its arbitration agreement with Fairways.
[6] Commercial disputes that its agreement with Fairways was to bind Commercial's subcontractors to arbitration, but says, nevertheless, that it bound its subcontractors to arbitrate, while reserving to itself the right to reject arbitration with its subcontractors. We do not decide these issues. We assume, for the sake of argument only, that Fairways' underlying premise is correct.
[7] Klosters Rederi A/S v. Arison Shipping Company, 280 So.2d 678 (Fla. 1973), does not, as Fairways suggests, announce a rule that a party may by seeking equitable relief in court extinguish another's contractual right to arbitration. In Klosters, not only was there the fait accompli of the appointment of a receiver (an "extreme and unmistakable act by a court of equity"); there existed, as well, waiver by the party demanding arbitration, a fact which is noted in subsequent cases as severely limiting the holding of Klosters. See Raymond, James and Associates, Inc. v. Maves, supra; Morton Z. Levine and Associates, Chartered v. Van Deree, 334 So.2d 287 (Fla. 2d DCA 1976).
[8] Fairways' response to the petition for writ of certiorari states, in part:

"In addition, if this Court compelled arbitration between the Owner and Contractor, the Owner's only remedy would be to pursue the lawsuit presently pending in the court below as to the other parties. Once again, the result of such a decision would be to deprive both the circuit court and the arbitration panel of the necessary parties each needs for a complete and final disposition of the issues raised by the Complaint."