705 P.2d 490

**U.S. INSULATION, INC., an Arizona corporation, Plaintiff-Appellee,**

v.

**HILRO CONSTRUCTION COMPANY, INC., an Arizona corporation, Defendant-Appellant.**

**No. 1 CA–CIV 6972.**

Court of Appeals of Arizona, Division 1, Department A.

Aug. 13, 1985.

Meyer, Vucichevich & Cimala, P.C. by George R. Ferrin, Phoenix, for plaintiff-appellee.

Watt & Cohen by Melvin C. Cohen, Tucson, for defendant-appellant.

## OPINION

CORCORAN, Judge.

The central issue presented by this appeal is whether the trial court erred in refusing to grant appellant Hilro Construction Company, Inc.'s motion to compel arbitration and stay court proceedings pursuant to A.R.S. § 12–1502. We conclude that such refusal was error and reverse.

In July 1981 appellee subcontractor U.S. Insulation, Inc. (USI) agreed to furnish and install batt insulation for appellant general contractor Hilro Construction Company, Inc., (Hilro) on a St. Johns, Arizona, high school construction project. The form contract provided by Hilro contained a provision regarding the arbitration of controversies arising between contractor and subcontractor.[1]

In the fall of 1981, Hilro advised USI in two separate letters that it considered the contract to be "null and void" due to USI's failure to include certain materials (therma studs) in its bid price and USI's alleged violation of a provision prohibiting assignment of the contract. USI filed suit for damages caused by Hilro's alleged repudiation of the contract, and Hilro filed a motion to compel arbitration and stay court proceedings pursuant to A.R.S. § 12–1502. USI opposed the motion, arguing that by its conduct Hilro had either repudiated the entire agreement including the arbitration

---

1. The arbitration clause in the agreement between the parties provided in relevant part as follows:

 If at any time any controversy should arise between Contractor and Subcontractor with respect to any matter or thing involved in this Contract or Project ... then the decision of the Contractor shall be followed by Subcontractor, and said controversy shall be decided as follows: (1) Subcontractor shall conclusively be bound by and abide by Contractor's decision, unless Subcontractor shall commence arbitration proceedings as hereinafter provided within Thirty (30) days following such decision; (2) if Subcontractor decides to appeal from the decision of Contractor, then the controversy shall be decided by arbitration in accordance with Construction Industry Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof, and the arbitration decision shall be final and binding on both parties and their sureties, if any.

provision or had waived its right to arbitration under the contract. Alternatively, USI argued that the dispute did not fall within the scope of the arbitration provision. The trial court found that by its correspondence Hilro had "repudiated the agreement in its entirety ... thus precluding its right to arbitrate under the agreement" and therefore denied Hilro's motion to compel arbitration and stay proceedings. Hilro appeals this ruling of the trial court.

[redacted] As a preliminary matter, we dispose of USI's contention that the trial court's denial of Hilro's motion to compel arbitration was an interlocutory order which is not appealable until final judgment in the matter. The denial of a motion to compel arbitration is substantively appealable. A.R.S. § 12–2101.01(A)(1); *Rancho Pescado, Inc. v. Northwestern Mut. Life Ins. Co.*, 140 Ariz. 174, 183, 680 P.2d 1235, 1244 (App.1984). *See also Dean Witter Reynolds Inc. v. Byrd.* — U.S. —, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). We now turn to the trial court decision denying the motion to compel arbitration and stay court proceedings.

[redacted] Due to the complexity of the legal issues involved, we begin by establishing a framework for our analysis. A.R.S. § 15–1502[2] limits the scope of judicial inquiry into the merits of a contract dispute to whether or not there exists an arbitration clause governing the controversy. A.R.S. § 12–1501 sets forth the grounds upon which the existence of an arbitration clause may be challenged:

> A provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

Grounds in equity or law for revocation of a contract include an allegation that the contract is void for lack of mutual consent, consideration or capacity or voidable for fraud, duress, lack of capacity, mistake, or violation of a public purpose. *Cf. Flower World v. Wenzel,* 122 Ariz. 319, 594 P.2d 1015 (App.1978).

[redacted] Read in conjunction, these statutory provisions embody the concept of separability endorsed by the Supreme Court of the United States in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Under the doctrine of separability, the arbitration clause is considered to be an agreement independent and separate from the principal contract. M. Domke, *Law and Practice of Commercial Arbitration* § 8:01 (1980). In *Prima Paint* the Supreme Court explained the doctrine as follows:

> ... *except where the parties otherwise intend*—arbitration clauses as a matter of federal law are "separable" from the contracts in which they are embedded, and ... where no claim is made that fraud was directed *to the arbitration clause itself,* a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud.

388 U.S. at 402, 87 S.Ct. at 1805 (second emphasis added).

The *Prima Paint* court construed a provision of the Federal Arbitration Act as requiring adoption of the separability doctrine. Section 4 of that Act, very similar in purpose to A.R.S. § 12–1502, provides that a federal court must order arbitration to proceed once it is satisfied that "the making of the agreement for arbitration or the failure to comply [therewith] is not in issue." With respect to the statutory language, the court stated:

> Accordingly, if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the "mak-

2. A.R.S. § 12–1502(A) provides:

> On application of a party showing an agreement described in § 12–1501, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party. Otherwise, the application shall be denied.

ing" of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally ... therefore ... a federal court may consider only issues relating to the making and performance of the agreement to arbitrate. In so concluding, we not only honor the plain meaning of the statute but also the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts.

388 U.S. at 403–04, 87 S.Ct. at 1805–1806.

■ In light of *Prima Paint* and the limited role of the courts as set forth in § 12–1502, we think it clear that the language of § 12–1501 stating that an arbitration clause shall be valid, enforceable and irrevocable "save upon such grounds as exist in law or in equity for the revocation of any contract" refers to grounds alleged with respect to the formation of the arbitration agreement itself, not the underlying contract.[3] *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* —— U.S. ——, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Quirk v. Data Terminal Sys., Inc.,* 379 Mass. 762, 400 N.E.2d 858, 861 (1980); *Post Tensioned Eng'g Co. v. Fairways Plaza,* 412 So.2d 871, 873 (Fla.App.1982).

■ The arbitration act addressed in *Prima Paint* permits judicial inquiry only as to whether "the *making* of the agreement for arbitration ... is not in issue." (Emphasis added.) Conduct not involving the formation of the arbitration agreement is clearly for the arbitrator under this type of statutory language. *See, e.g., Gersh v. Concept House, Inc.,* 291 So.2d 258 (Fla. App.1974). A.R.S. § 12–1501, however, re-

quires that the court determine the *existence* of a challenged arbitration provision.

■ Arizona cases make it clear that although an arbitration agreement has validly been made, a party to the contract may waive his right to seek its enforcement. *Bolo Corp. v. Homes & Son Constr. Co.,* 105 Ariz. 343, 464 P.2d 788 (1970), and we have consistently stated that the right to arbitrate may be waived by conduct referable to the arbitration agreement itself. *Bolo; Rancho Pescado, Inc. v. Northwestern Mut. Life Ins. Co., supra; EFC Dev. Corp. v. F. F. Baugh Plumbing & Heating,* 24 Ariz.App. 566, 540 P.2d 185 (1975) (*Baugh*).

■ *Bolo* presents an example of the type of repudiating conduct that will result in a waiver of the right to arbitrate. There, the subcontractor refused the contractor's request to submit a dispute to arbitration in accordance with their agreement. Rather than compelling arbitration, the contractor initially elected to file a lawsuit seeking damages for breach of contract. Six months after the proceedings had commenced and various pleadings had been filed, the contractor finally sought to compel arbitration. The Supreme Court held that by seeking redress through the court system, rather than seeking arbitration, the contractor had acquiesced in the subcontractor's rejection of the arbitration clause and had thereby waived its right to compel arbitration under the contract. While a repudiation of the arbitration clause itself will be held to constitute a waiver of the right to arbitrate, a repudiation of any other obligation under the contract will not. This distinction is theoretically consistent with the principle of separability and is furthermore required by common sense. The reason a repudiation of any other obligation should not affect the validity of an arbitration clause was

---

**3.** This court discussed and implicitly adopted the *Prima Paint* separability doctrine in *Flower World, supra.* In that case, the soundness of the *Prima Paint* rationale was not directly challenged. Rather, the issue before us was whether an allegation of fraud in the inducement of a contract should be decided by the court or the

arbitrator when the claim was based not upon common law fraud but upon an alleged violation of the Arizona Consumer Fraud Act. We held that the issue was properly for the arbitrator, thus necessarily adopting the separability doctrine.

most succinctly expressed in the leading House of Lords case of *Heyman v. Darwins, Ltd.,* [1942] A.C. 356:

> Repudiation, then, in the sense of a refusal by one of the parties to a contract to perform his obligations thereunder, does not of itself abrogate the contract. The contract is not rescinded. It obviously cannot be rescinded by the action of one of the parties alone. But, even if the so-called repudiation is acquiesced in or accepted by the other party, that does not end the contract. The wronged party has still his right of action for damages under the contract which has been broken, and the contract provides the measure of those damages. It is inaccurate to speak in such cases of repudiation of the contract. The contract stands, but one of the parties has declined to fulfil his part of it. There has been what is called a total breach or a breach going to the root of the contract and this relieves the other party of any further obligation to perform what he for his part has undertaken. Now, in this state of matters, why should it be said that the arbitration clause, if the contract contains one, is no longer operative or effective? A partial breach leaves the arbitration clause effective. Why should a total breach abrogate it? The repudiation being not of the contract but of obligations undertaken by one of the parties, why should it imply a repudiation of the arbitration clause so that it can no longer be invoked for the settlement of disputes arising in consequence of the repudiation? ...
>
> ....
>
> ... It is said to be wrong to allow a party to a contract who has refused to perform his obligations under it at the same time to insist on the observance of a clause of arbitration embodied in the contract. The doctrine of approbate and reprobate is said to forbid this. I appreciate the apparent dilemma, but with the greatest respect I venture to think it is based on a misapprehension. The key is to be found in the distinction which I have endeavoured to draw between the arbitration clause in a contract and the executive obligations undertaken by each party to the other. I can see nothing shocking or repugnant to law in one business man saying to another that he regrets he finds himself unable to go on with his deliveries under a contract between them and at the same time asking the other to join with him in a reference under an arbitration clause in their contract to ascertain what compensation is to be paid for his default.

[1942] A.C. at 373–375. The *Heyman* rationale has been endorsed by United States courts. *See e.g., Riess v. Murchison,* 384 F.2d 727 (9th Cir.1967); *In re Pahlberg,* 131 F.2d 968 (2d Cir.1942); *Batter Bldg. Materials Co. v. Kirschner,* 142 Conn. 1, 110 A.2d 464 (1954); *DeLillo Constr. Co. v. Lizza & Sons, Inc.,* 7 N.Y.2d 102, 195 N.Y. S.2d 825, 164 N.E.2d 95 (1959).

This court has twice stated that a trial court cannot properly refuse to compel arbitration on grounds of an alleged breach unless the arbitration clause itself has been repudiated. In *Baugh* we explained the rationale for limiting our use of the waiver principle to conduct repudiating the arbitration clause itself:

> [T]he very purpose of arbitration provisions would be defeated and their effectiveness severely limited if a party were held to have abandoned his arbitration rights merely because his actions might be construed to constitute a breach of the contract prior to the time he seeks a clarification of those rights through arbitration. In effect, appellant would require a predetermination by the court of the parties' rights, i.e., whether or not one of them had actually breached the contract as a precondition to arbitration proceedings, notwithstanding the fact that the parties by their contract have established arbitration proceedings as the proper forum for the determination of such questions.

By its very nature the arbitration clause in the contract is distinct from other clauses. It is not to be considered as a clause in favor of one party or the

other, the performance of which might be excused by the breach of other provisions of the contract. Rather, the arbitration clause constitutes the consent of the parties to the establishment of extra-legal machinery for the settlement of their disputes. Even if we assume that appellee's action in reducing its work force constituted a breach of its obligations under the contracts, we find no merit in appellant's contention that such breach constituted an abandonment or repudiation so as to render the arbitration provisions of the contract unavailable to the appellee.

24 Ariz.App. at 569, 540 P.2d at 187.

Our most recent opinion on this issue, *Rancho Pescado*, was based on facts similar to those before the court in this case. In that case, licensor insurance company, Northwestern Mutual, notified licensee corporation Rancho Pescado by letter that it was terminating its contract for cause. Rancho Pescado filed a complaint seeking damages, thereby waiving its right under *Bolo* to seek arbitration pursuant to the contract. Northwestern did not acquiesce in the repudiation of the arbitration clause, but rather filed a motion to compel arbitration. The trial court denied Northwestern's motion and, after a jury trial, entered judgment n.o.v. against Rancho Pescado. Rancho Pescado appealed, and Northwestern cross-appealed on several issues, including the denial of its application for arbitration. In response, Rancho Pescado argued that by its letter Northwestern had repudiated the entire contract and thereby waived its right to arbitration. We rejected Rancho Pescado's argument by extending the rationale of *Baugh* which involved the alleged breach of a single contractual obligation, to conduct alleged to be a repudiation of the entire agreement. Quoting the *Baugh* language set forth in this opinion, we again stressed the unique nature and purpose of the arbitration clause, and noted that the letter was merely alleged to be a repudiation of the underlying contact:

> Northwestern's letter is an attempt to terminate the license agreement for cause. This position may or may not be

supported by the evidence. If not, Northwestern's action would be considered a breach of the agreement. However, as we stated in *EFC Development Corp. [v. Baugh]*, such a breach does not constitute an abandonment or repudiation of the arbitration clause of the agreement.

140 Ariz. at 180, 680 P.2d at 1241.

■ In light of the foregoing analysis, it is clear that a successful challenge to a motion to compel arbitration requires evidence that either: (1) with respect to the enforceability of the arbitration agreement itself, there exists grounds "in law or in equity for the revocation of any contract," A.R.S. § 12–1501, *Prima Paint;* or (2) the arbitration clause itself has been repudiated, thereby resulting in a waiver of the repudiating party's right to seek arbitration. *Bolo; Rancho Pescado; Baugh.*

■ The trial court found that Hilro was precluded from its right to arbitrate because it had repudiated the contract in its entirety. The letter upon which the trial court based its finding provided as follows:

> This is to inform you that as of this day, September 4, 1981, your contract with Hilro Construction Company for the St. John's High School Project is *null and void.* Your bid for the installation was rejected due to the fact that it omitted therma studs as required for the completion of this project. Therefore, we are requesting that you return our contract as soon as possible or include the therma studs for the amount in your contract.
>
> Please advise me as soon as possible of your decision.

(Emphasis added.) We will affirm the trial court's decision if it is correct for any reason. *Gary Outdoor Advertising Co. v. Sun Lodge, Inc.,* 133 Ariz. 240, 650 P.2d 1222 (1982); *Rancho Pescado, supra.*

We think the trial court's finding that a "repudiation" of the entire contract precludes a party from seeking to compel arbitration misapplies the law to the facts of this case. The trial court apparently based

its conclusion upon statements contained in two cases extensively cited by both parties, *Riess v. Murchison, supra,* and *In re Pahlberg, supra.* For example, in *Pahlberg,* the Second Circuit Court of Appeals quoted with approval the following language from *Heyman v. Darwins, Ltd.:*

> An arbitration clause is a written submission, agreed to by the parties to the contract, and, like other written submissions to arbitration, must be construed according to its language and in light of the circumstances in which it is made. If the dispute is whether the contract which contains the clause has ever been entered into at all, that issue cannot go to arbitration under the clause, for the party who denies that he has ever entered into the contract is thereby denying that he has ever joined in the submission. Similarly, if one party to the alleged contract is contending that it is void *ab initio* (because, for example, the making of such a contract is illegal), the arbitration clause cannot operate, for on this view the clause itself also is void.

131 F.2d at 970, *quoting,* [1942] A.C. at 356, 366.

Applying the test established above, it is first clear USI has not alleged that Hilro's repudiating conduct rendered the underlying contract void *ab initio.* Under the principle of separability embodied in A.R.S. § 12–1501, even if USI alleged that the underlying contract was void, the issue would still be one for the arbitrator unless USI alleged that the arbitration agreement itself was void *ab initio* for grounds as exist in law or in equity for the revocation of any contract. Second, applying a waiver analysis, it is clear that USI and the trial court have failed to distinguish a denial that the contract is legally enforceable, from a denial of any obligation to perform under the contract. An example of the former is found in the leading California case of *Bertero v. Superior Court,* 216 Cal.App.2d 213, 30 Cal.Rptr. 719 (1963), cited in *Riess v. Murchison* and discussed

by this court in *Rancho Pescado.* In *Bertero* an employer terminated an employee's contract by a letter stating that:

> [t]he circumstances under which it was entered into render it invalid and unenforceable ... the agreement is invalid, unenforceable, and an imposition upon the company and its shareholders ... the company hereby terminates and cancels such agreement.

30 Cal.Rptr. at 721. The California court held this unequivocal denial that the contract had legally been entered constituted grounds under a waiver or estoppel theory for denying the employer's request for arbitration. A denial that there is any obligation to perform under the contract, on the other hand, does not amount to a waiver of the right to request arbitration. As explained by the *Heyman* court:

> [I]n a situation where the parties are at one in asserting that they entered into a binding contract, but a difference has arisen between them whether there has been a breach by one side or the other, or whether circumstances have arisen which have discharged one or both parties and further performance, such differences should be regarded as differences which have arisen "in respect of," or "with regard to," or "under" the contract, and an arbitration clause which uses these, or similar, expressions should be construed accordingly.

[1942] A.C. at 356, 366.

In the present case, Hilro has never denied that the contract was legally formed.[4] Although Hilro used the words "null and void" to describe the contract, an examination of the correspondence in which the phrase was used leaves no doubt that Hilro was referring to its performance obligations, not the legal enforceability of the contract. *Cf., New Linen Supply v. Eastern Envt'l Controls, Inc.,* 96 Cal.App.3d 810, 158 Cal.Rptr. 251 (1979).

In its letter of September 4, 1981, Hilro stated that it would consider the contract

---

**4.** Even if Hilro had made such an allegation, it is not clear whether we would extend our waiver doctrine to encompass such a claim. It would appear to be inconsistent with the princi-

ple of separability and prior Arizona waiver cases in that a denial of the type in *Bertero* does not indicate a denial of the existence of the arbitration clause itself.

null and void unless USI included therma studs in its bid price. In a second letter dated November 16, 1981, Hilro made the following statement:

> Our bid records show that the bid was from U.S. Insulation of Mesa and not of U.S. Insulation of Northland. It is clearly stated in our contract agreement that our contract is not transferable to any other affiliate of the subcontracting company. Transferring of our contract is in violation of our contract agreement. Due to this fact our contract is null and void and is no longer in effect. Please return your copy of your contract to our office as soon as possible.

Obviously, Hilro merely considered the contract to be "null and void" only in the sense that USI's conduct relieved Hilro of its performance obligations. Under *Rancho Pescado,* this total anticipatory repudiation by Hilro of its contractual obligations did not constitute a waiver of the right to request arbitration. The trial court erred in refusing to compel arbitration on this basis.

USI argues that Hilro's delay in seeking arbitration provides an alternative ground for upholding the trial court's decision on a waiver theory. We disagree. The particular arbitration clause was worded so that the responsibility to seek arbitration lay solely with the subcontractor. The clause provided that when controversies arose, the subcontractor would be deemed to agree with the decision of the contractor unless it sought arbitration within thirty days from the contractor's decision. Under this clause, the contractor was empowered to make any decision it chose regarding a particular controversy unless the subcontractor sought arbitration of the matter. Hilro's failure to initiate arbitration prior to the filing of suit by USI, therefore, was consistent with the arbitration clause. After USI filed suit, Hilro moved quickly to call the arbitration clause to the trial court's attention and to demand that arbitration rather than litigation be the means of settling disputes. We find no unreasonable delay by Hilro and no action on Hilro's part inconsistent with its rights under the arbitration clause to insist that arbitration rather than litigation be the method of resolving disputes.

Finally, USI argues that the trial court's refusal to compel arbitration should be upheld because the particular dispute involved in this case did not fall within the scope of the arbitration clause. USI correctly observes that parties are bound to arbitrate only the issues which by the clear language of the agreement are subject to arbitration. *Clarke v. Asarco Inc.,* 123 Ariz. 587, 601 P.2d 587 (1979). An agreement to arbitrate will not be *extended* by construction or implication. *Allstate Ins. Co. v. Cook,* 21 Ariz.App. 313, 519 P.2d 66 (1974). However, it is also well established that, due to the public policy favoring arbitration, arbitration clauses should be construed liberally and any doubts as to whether or not the matter in question is subject to arbitration should be resolved in favor of arbitration. *New Pueblo Constr., Inc. v. Lake Patagonia Recreation Ass'n,* 12 Ariz.App. 13, 16, 467 P.2d 88, 91 (1970).

USI argues that there is no language in the arbitration clause providing for arbitration of controversies involving the total breach of the contract by anticipatory repudiation. It argues that the arbitration provision applies only to disputes arising during the course of performance and not prior to the commencement of performance, pointing out that the first paragraph of the arbitration provision discusses "work done" and "material or services furnished." Further, USI draws our attention to the fact that there is other language indicating disputes should not interfere with the work and requiring the subcontractor to proceed with work as directed by the contractor while arbitration takes place. It argues that this language would have no effect if the arbitration clause applies to situations in which the contractor refuses to allow the subcontractor to proceed with its performance.

We do not agree that the arbitration clause applies only to disputes concerning the performance of the contract and excludes the dispute in this situation involv-

ing total breach by anticipatory repudiation. There is no language expressly limiting the clause to disputes arising after performance has begun and involving partial breach as opposed to total breach. In *New Linen Supply* the California court held that "[i]n the absence of language restricting the use of arbitration, we will not imply that its use was intended to be so limited." 96 Cal.App.2d at 817, 158 Cal. Rptr. at 255. Moreover, in this case the clear language of the contract makes the arbitration clause applicable to *"any controversy"* arising "between contractor and subcontractor with respect to *any matter or thing involved in the contract or project,* which controversies are not controlled or determined by the hereinabove section, or other provisions of this contract." (Emphasis added.)

 USI would have us find that the language stating that disputes should not interfere with the work and (2) that the subcontractor shall proceed with the work as directed by the contractor indicates that the arbitration clause should not apply in situations where there is an anticipatory repudiation by the contractor. We do not believe this language leads us to such a finding. It is the duty of the court to adopt a construction of a contract which will harmonize all of its parts, and apparently conflicting parts must be reconciled, if possible, by any reasonable interpretation. *Employer's Liab. Assur. Corp. v. Lunt,* 82 Ariz. 320, 313 P.2d 393 (1957). It is clear that the language in question is aimed at benefitting the contractor and owner of the project. We find that it is merely descriptive of what is to happen under circumstances in which the contractor desires the work to continue and does not mean that the arbitration clause is not applicable in situations where the contractor does not desire that the subcontractor proceed with the work.

██ Having considered all the arguments made by USI, we find no grounds for upholding the trial court's refusal to compel arbitration. Even so, we do not find that the arbitration clause can be enforced in its entirety in this particular situation. We note that running through

USI's brief is the suggestion of the inequity of allowing Hilro, who declared the contract "null and void," to compel strict adherence to the portion of the arbitration clause that required the subcontractor to seek arbitration within thirty days after the contractor made its decision about the dispute. We note that nowhere in the record in this case, including Hilro's briefs, does it argue that after its motion to compel arbitration is granted, the proceedings should be dismissed because arbitration was not timely requested by USI. Nor would Hilro succeed on this argument. While we have held that Hilro's declaration that the contract was "null and void" did not actually void the contract, this language reasonably could have misled USI into thinking that Hilro had repudiated the arbitration clause and that it no longer applied. In this circumstance, it would be inequitable to allow Hilro to later claim that the proceedings should be dismissed due to USI's failure to timely request arbitration. In any event, counsel for Hilro at oral argument indicated that it would not seek to enforce the thirty-day provision.

██ Finally, we consider Hilro's request for attorney's fees pursuant to A.R.S. § 12–341.01. USI opposes the request, pointing out that to date there has been no determination on the merits on this case and, therefore, no successful party. Without holding that A.R.S. § 12–341.01 is applicable in this case, we interpret A.R.S. § 12–341.01 to mean that the ultimate prevailing party in an underlying action arising out of contract may be awarded attorney's fees. No decision on the merits has been made in this case and, therefore, we make no ruling on the attorney's fees issue at this time. *See, Esmark, Inc. v. McKee,* 118 Ariz. 511, 578 P.2d 190 (App.1978).

The decision of the trial court to deny the request to compel arbitration is reversed, and the case is remanded to the trial court for proceedings consistent with this opinion.

FROEB and OGG, JJ., concur.