NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SINGH ROOFING, LLC, *Plaintiff/Appellant*,

*v.*

SHADOWOOD CONDOMINIUM ASSOCIATION, et al.,
*Defendants/Appellees.*

No. 1 CA-CV 20-0320
FILED 1-28-2021

Appeal from the Superior Court in Maricopa County
No. CV2019-005882
The Honorable James D. Smith, Judge

**AFFIRMED**

COUNSEL

Lang & Klain, PC, Scottsdale
By Michael W. Thal, Erika L. Johnsen
*Counsel for Plaintiff/Appellant*

Welsh Law Group, Phoenix
By Kenneth W. Welsh, John J. DeWitt
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge Randall M. Howe and Judge Maria Elena Cruz joined.

---

**P E R K I N S**, Judge:

¶1          Singh Roofing, LLC ("Singh") appeals the superior court's order affirming an arbitration award. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2          In April 2017, Shadowood Condominium Association ("Shadowood") contracted with Singh to replace multiple roofs within Shadowood's condominium complex ("Contract"). Singh agreed to repair the roofs in exchange for all funds paid to Shadowood by Shadowood's insurance provider. The Contract contained an arbitration provision requiring the parties to resolve "any disputes" through arbitration.

¶3          Shadowood's insurance provider was hesitant to approve the roof repairs. Singh encouraged Shadowood to hire John Palau, a public adjuster, to assist in the negotiation process. Shadowood informed Singh it could not afford to pay a public adjuster. But Shadowood contracted with Palau anyway. And it agreed to compensate Palau with 10% of the total proceeds paid by Shadowood's insurance provider.

¶4          In June 2018, Shadowood's insurance provider paid Shadowood $748,170.22 for the cost of the roofing job. This amount did not include overhead and profit ("O&P").

¶5          After Singh completed the repairs in November 2018, a dispute arose between Shadowood and Singh as to which party was responsible for paying Palau. Shadowood claimed that before it contracted with Palau, Singh promised to reduce its fees by the amount Palau charged and that Singh would pay Palau, notwithstanding whether Shadowood's insurance provider distributed an additional 10% for O&P. But Singh believed Palau would only receive insurance proceeds if Shadowood's insurance provider agreed to pay the 10% for O&P.

¶6          Shadowood's insurance provider never distributed additional funds to account for O&P. Singh refused to pay Palau.

2

Shadowood ultimately paid Palau $80,000, deducting that amount from the total it owed Singh for completing the roof repairs.

¶7　　　　In March 2019, Singh sued Shadowood for breach of contract, violation of the Prompt Pay Act, and unjust enrichment. Singh also sued Stephen O'Farrell, the president of Shadowood, and Fredrick Petters, the treasurer of Shadowood, for conversion. The parties agreed to arbitrate in April 2019.

¶8　　　　In May 2019, Shadowood answered and filed a counterclaim, alleging Singh committed fraud when it encouraged Shadowood to hire Palau. The parties agreed to address Shadowood's counterclaim during arbitration.

¶9　　　　The arbitrator heard testimony from both sides and concluded that the Contract controlled. As an initial matter, the arbitrator rejected Shadowood's counterclaim alleging fraud and Singh's claim under the Prompt Pay Act. Singh also dismissed its conversion claims against O'Farrell and Petters, which left only Singh's breach of contract claim.

¶10　　　　The arbitrator found that Shadowood did not breach the Contract. Rather, Singh breached an oral contract that the parties entered into after the Contract, but before Shadowood contracted with Palau. According to the arbitrator, Singh and Shadowood "entered into a second, subsequent oral agreement in July 2017." This second contract established Palau would be hired to assist both Shadowood and Singh in negotiating with Shadowood's insurance provider. Although Singh was not a party to the contract between Shadowood and Palau, the evidence demonstrated that, but for Singh, Palau would not have been involved in the transaction at all.

¶11　　　　The arbitrator acknowledged that Shadowood failed to raise a breach of contract claim against Singh. In a footnote of the arbitrator's interim award, he noted:

> It could be argued that the Defendants did not sue Mr. Singh for breach of contract; rather they sued him for consumer fraud. Pursuant to ARCP, Rule 15(b) I am considering the HOA's counterclaim to be amended to include a claim for Breach of Contract or for the Answer to include a defense of Offset.

¶12 After finding in favor of Shadowood, the arbitrator granted an interim award of $8,000 to Singh that Shadowood allegedly overpaid to Palau. Singh moved to vacate the arbitrator's interim award and disqualify the arbitrator. The superior court denied Singh's request.

¶13 In January 2020, the arbitrator made his final award, affirming his earlier findings that Shadowood did not breach the Contract and Singh breached the oral contract. The arbitrator ultimately awarded Singh $3,305.37 in interest stemming from Shadowood's delayed payment of an undisputed amount before arbitration.

¶14 The superior court affirmed the award against Shadowood. Singh timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A).

## DISCUSSION

¶15 "[J]udicial review of an arbitration award is substantially limited by statute." *RS Indus., Inc. v. Candrian*, 240 Ariz. 132, 135, ¶ 7 (App. 2016). We will affirm the confirmation of an arbitration award absent an abuse of discretion. *Atreus Cmtys. Grp. of Ariz. v. Stardust Dev., Inc.*, 229 Ariz. 503, 506, ¶ 13 (App. 2012).

## I.    Scope of Arbitrator

¶16 An arbitrator's award must be vacated when the arbitrator exceeded his powers. A.R.S. § 12-3023(A)(4). An arbitrator's decisions regarding questions of law and fact are final and will not be disturbed unless the arbitrator has purported to decide a matter that is beyond the scope of the issues submitted for arbitration. *Smitty's Super-Valu, Inc. v. Pasqualetti*, 22 Ariz. App. 178, 180–181 (App. 1974). "[A]n arbitration award is not subject to attack merely because one party believes that the arbitrators erred with respect to factual determinations or legal interpretations." *Hirt v. Hervey*, 118 Ariz. 543, 545 (App. 1978). As the party attacking the award, Singh bears the burden of showing that the arbitrator exceeded his powers under the Contract. *See Smitty's Super-Valu, Inc.*, 22 Ariz. App. at 182.

¶17 Singh argues the arbitrator exceeded his authority by resolving a dispute arising from the oral contract the parties entered after the Contract. We disagree. There is no language expressly limiting the arbitration clause to disputes concerning the Contract in which the clause appears as opposed to disputes concerning the parties' roofing transaction more generally. *See U.S. Insulation, Inc. v. Hilro Constr. Co., Inc.*, 146 Ariz. 250, 259 (App. 1985) (arbitration agreement applied to all disputes arising

4

out of the contract, not just those arising out of the performance of the contract). "[I]n the absence of language restricting the use of arbitration, we will not imply that its use was intended to be so limited." *Id.* (quoting *New Linen Supply v. E. Env't Controls, Inc.*, 158 Cal. Rptr. 251, 255 (Cal. Ct. App. 1979)).

**¶18** Singh further contends the arbitrator exceeded his authority by amending Shadowood's counterclaim to include a breach of contract counterclaim. Singh does not challenge the arbitrator's power to rule on the issues presented for review. Rather, Singh argues the arbitrator exceeded his powers by incorrectly applying Arizona Rule of Civil Procedure 15(b)(2) and Arizona case law. An "arbitrator's decisions are final and binding as to both issues of fact and law, regardless of the correctness of the decision." *Atreus Cmtys. Grp. of Ariz.*, 229 Ariz. at 506, ¶ 13. We will not review an arbitrator's legal conclusions. *See id.*

**¶19** Because Singh failed to show that the arbitrator exceeded his powers under the law and the Contract, the superior court did not abuse its discretion in confirming the arbitrator's award.

## II.       Manifest Disregard

**¶20** Singh argues the arbitrator exhibited a manifest disregard of the law by disregarding our supreme court's decision in *Smith v. Cont'l Bank*, 130 Ariz. 320 (1981). The Federal Arbitration Act ("FAA") allows a federal court to vacate an arbitration award "that is completely irrational or exhibits a manifest disregard for the law." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997–98 (9th Cir. 2003). Vacating an award on this basis requires the record to clearly demonstrate "that the [arbitrator] recognized the applicable law and then ignored it." *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995).

**¶21** Although Singh cited several cases applying the manifest disregard of the law standard under the FAA, it failed to cite any Arizona authority applying the standard under Arizona's version of the Revised Uniform Arbitration Act ("AZ-RUAA"). *See* A.R.S. §§ 12-3001 to -3029. Both parties acknowledge AZ-RUAA governs the case before us. In 2010, the Arizona legislature adopted the AZ-RUAA, which articulated a finite list of circumstances when a court must vacate an arbitration award. *See* A.R.S. § 12-3023(A). Neither the prescribed circumstances under the AZ-RUAA nor Arizona case law explicitly permits manifest disregard of the law as a basis for setting aside an arbitration award. We thus decline to apply it here.

**¶22** Even if we were to conclude that the manifest disregard of the law standard is a basis for vacating an award under the AZ-RUAA, nothing in the record indicates the arbitrator manifestly disregarded the law.

### III. Evident Partiality

**¶23** Finally, Singh argues the arbitrator demonstrated evident partiality under A.R.S. § 12-3023(A)(2)(a) by amending Shadowood's pleadings to produce a favorable outcome for Shadowood.

**¶24** Singh cites the arbitrator's decision to amend Shadowood's pleadings to support its argument that the arbitrator "depart[ed] from his neutral role." We join in the superior court's rejection of that argument. The superior court concluded that Singh "did not cite any authority supporting" its claim of bias nor did it "suggest that the Arbitrator failed to disclose a conflict of interest, a close relationship to [Shadowood], a financial stake in the outcome, etc." The court reasoned that Singh essentially argued that an erroneous decision about amending Shadowood's pleadings indicated the arbitrator's actual bias. No case law supports this contention. The superior court did not abuse its discretion in rejecting Singh's assertion that the arbitrator's award displayed evident partiality.

### IV. Attorneys' Fees

**¶25** Both parties request attorneys' fees under A.R.S. § 12-341.01. We award Shadowood reasonable attorneys' fees on appeal subject to its compliance with ARCAP 21.

### CONCLUSION

**¶26** We affirm.

