601 P.2d 587

Dan W. CLARKE and Eileen J. Clarke, husband and wife, Appellees,

v.

ASARCO INCORPORATED, a New Jersey Corporation, Appellant.

No. 14215–PR.

Supreme Court of Arizona, In Banc.

Sept. 14, 1979.

Rehearing Denied Oct. 23, 1979.

Evans, Kitchel & Jenckes by Burton M. Apker, Lex J. Smith and Barry J. Dale, Phoenix, for appellant.

Stanfield, McCarville, Coxon, Cole & Fitzgibbons by David A. Fitzgibbons, Casa Grande, for appellees.

HOLOHAN, Justice.

Plaintiffs Dan W. Clarke and Eileen J. Clarke entered into a lease of agricultural land from Defendant ASARCO Inc. The lease was for a term beginning January 1, 1976, and ending December 31, 1977. AS-ARCO had purchased the subject property intending to retire it from agricultural use and to extract the groundwater for industrial use on other parcels of land. The legality of using groundwater resources on land other than the land from which it was extracted was uncertain, and while awaiting a decision from the courts on this question, ASARCO leased the land to the Clarkes for their use in agricultural production. ASARCO anticipated a decision regarding the use of groundwater during the lease term and therefore reserved the right to terminate the lease upon 30 days' notice. Paragraph 30 reads as follows:

"30. RIGHT TO EARLY TERMINATION: Lessor reserves the right to terminate this Lease at any time upon giving to Lessees written notice of such termination not less than thirty (30) days prior to such termination. In the event of such an early termination, either:

"1. Lessor shall pay to Lessees an amount equal to Lessees' investment in the crops growing on the premises at the time of such termination and which have not at such time matured, and Lessees shall have the right to harvest

the crops growing on the demised premises which have at such time matured, or

"2. At the Lessor's sole option and as an alternative to the foregoing, Lessor shall pay to Lessees the cash value of the crops growing on the premises at the time of such termination less the costs and expenses which would have been necessarily expended by Lessees in order to mature and harvest such crops.

"In the event the parties are not able to agree upon all matters covered by this paragraph, such matters which are in dispute shall be settled by arbitration under the laws of the State of Arizona."

Under the terms of paragraph 22 of the lease ASARCO agreed to subordinate its interest in the crops grown by the Clarkes to any institution granting loans to Clarke to finance his production. Paragraph 22 reads as follows:

"22. CROP LIEN SUBORDINATION: Lessor hereby agrees that during the term hereof it will execute any and all such documents as may be proper and necessary to subordinate its interest in and to any crops grown upon the premises to the lien of any person financing the growing of such crops."

The Clarkes procured financing from Producers Cotton Oil Company and on January 1, 1977, pursuant to paragraph 22 of the lease ASARCO Inc. executed an instrument entitled, "Subordination of Interest" in favor of Producers. The terms of the subordination agreement except for the legal description of the subject property are as follows:

"SUBORDINATION OF INTEREST

"TO: PRODUCERS COTTON OIL COMPANY, P. O. Box 1984, Phoenix, Arizona 85001

"In consideration of such advances of money as may be made to DAN CLARKE hereinafter referred to as "Grower", by PRODUCERS COTTON OIL COMPANY, hereinafter referred to as "Company", under its usual and cus-tomary financing arrangements, the undersigned, whether one or more, does hereby authorize Grower to grant to Company a security interest in all the crops, and products and proceeds thereof, growing or to be grown during the cropping season(s) of 1977–1978 on the following described real property in the County of PIMA, State of Arizona.

\*     \*     \*     \*     \*     \*

"Until the indebtedness of Grower to Company has been fully repaid with interest and charges, if any, the undersigned hereby subordinates all interest or lien which he may have or claim to have in said crops, products and proceeds, however claimed or acquired, to the lien and rights of said Company under any Financing Statement, Security Agreement, or any such other contractual obligation executed and entered into by Grower.

"Should the undersigned take possession of the said real property for any reason prior to the complete production, harvesting and removal of the crops growing or to be grown thereon, the undersigned agrees to permit the complete production, harvesting and removal of said crops by said Grower and said Company, or either of them unmolested by the undersigned.

"IT IS UNDERSTOOD THAT BY THIS SUBORDINATION, THE UNDERSIGNED IN NO WAY RELEASES, WAIVES OR IMPAIRS THE OBLIGATIONS OF GROWER TO THE UNDERSIGNED. DATED: 1/7/77

/s/ T. E. Scartaccini, Manager
ASARCO Incorporated"

On April 13, 1977, ASARCO gave written notice to the Clarkes that it was terminating the lease pursuant to the terms of paragraph 30. Thereafter the Clarkes filed this suit alleging that ASARCO had breached the terms of the lease. ASARCO then filed a motion in the superior court to compel arbitration under the terms of paragraph 30. The superior court denied ASARCO's motion to compel arbitration and held as follows:

". . . the subordination agreement so modified the relationship of the parties under the original agreement that an alleged breach thereof is not subject to the arbitration provision inasmuch as the 30-day period was thereby eliminated."

ASARCO filed a timely appeal in the Court of Appeals alleging error by the trial court in refusing to order arbitration. The Court of Appeals Division Two agreed with AS-ARCO and reversed with directions to the trial court to enter an order staying further proceedings pending arbitration. The Clarkes filed a motion for rehearing which was denied; thereafter they filed a petition for review in this court; we granted review.

The sole question presented by this appeal is whether ASARCO is entitled to enforce the provisions of paragraph 30 relating to compulsory arbitration. Initially we agree with ASARCO that the public policy of Arizona favors arbitration as a means of disposing of controversy. *Jeanes v. Arrow Insurance Co.,* 16 Ariz.App. 589, 494 P.2d 1334 (1972). Notwithstanding such public policy, an arbitrator cannot resolve issues which go beyond the scope of the submission agreement. *Allstate Insurance Company v. Cook,* 21 Ariz.App. 313, 519 P.2d 66 (1974). The portion of paragraph 30 which defines what issues are subject to arbitration reads as follows:

"In the event the parties are not able to agree upon all matters covered by this paragraph, such matters which are in dispute shall be settled by arbitration . . . ."

By its terms the agreement to arbitrate governs only those items "covered" by paragraph 30. The dispute in question, however, concerns whether paragraph 22 and the Subordination Agreement modify the provisions of paragraph 30 relating to early termination. The dispute, therefore, is not derived solely from an application of the terms of paragraph 30 but instead revolves around whether paragraph 30 applies at all in light of the execution by ASARCO of the Subordination Agreement pursuant to paragraph 22. The terms of the Subordination Agreement are so clearly in conflict with portions of paragraph 30 that questions regarding contract modification, estoppel, and the applicability of principles of third-party beneficiary contracts arguably apply. For these reasons we feel the disputes involved in the instant suit go far beyond the scope of issues which the parties intended to submit to arbitration under the terms of the agreement to arbitrate. The contract could have required that all disputes arising out of the contract as a whole be subject to arbitration. It did not so state and by its terms governed only disputes covered by paragraph 30. As we have stated, the dispute is whether paragraph 30 applies at all. Parties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate. *Allstate Insurance Company v. Cook, supra.*

The decision of the Court of Appeals is vacated. The order of the superior court denying arbitration is affirmed, and the cause is remanded to the superior court for further proceedings consistent with this opinion.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concur.