IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

JEFFREY HAMBLEN AND BARBARA YOUNGS,
HUSBAND AND WIFE,
*Petitioners*,

*v.*

HON. RALPH HATCH, JUDGE OF THE SUPERIOR COURT
OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF NAVAJO,
*Respondent Judge*,

WINSLOW MEMORIAL HOSPITAL, INC.,
D/B/A LITTLE COLORADO MEDICAL CENTER,
*Real Party in Interest*.

No. CV-16-0260-PR
Filed July 21, 2017

Appeal from the Superior Court in Navajo County
The Honorable Ralph E. Hatch, Judge
No. CV-2014-00311
**REVERSED AND REMANDED WITH DIRECTIONS**

Special Action Order of the Court of Appeals, Division One
No. 1 CA-SA 16-0201

COUNSEL:

Scott W. Rodgers (argued), Thomas L. Hudson, Joshua D. Bendor, Osborn Maledon, P.A., Phoenix, Attorneys for Jeffrey Hamblen and Barbara Youngs

Randall Yavitz, Isabel M. Humphrey (argued), Hunter, Humphrey & Yavitz, PLC, Phoenix; and James E. Ledbetter, Jared R. Owens, The Ledbetter Law Firm, P.L.C., Cottonwood, Attorneys for Winslow Memorial Hospital Inc.

———————————

VICE CHIEF JUSTICE PELANDER authored the opinion of the Court, in which CHIEF JUSTICE BALES, JUSTICES BRUTINEL, TIMMER, BOLICK, and LOPEZ, and JUDGE GURTLER* joined.

———————————

VICE CHIEF JUSTICE PELANDER, opinion of the Court:

¶1          In this employment dispute, the parties submitted their respective claims to mandatory arbitration under their employment contract's broad arbitration provision, which neither side challenged.  The arbitrator ruled in favor of the employer, concluding that it properly rescinded the contract based on the employee's underlying misrepresentations and omissions.  The final arbitration award, which the superior court later confirmed at the employer's request, fully settled all claims and counterclaims submitted to arbitration and denied all claims not expressly granted in the award.  Applying the "separability" doctrine, we hold that the employer, having not specifically challenged the contract's arbitration provision, may not litigate in this action claims against the employee that, at the least, were permissive counterclaims in the arbitration.

**I.**

¶2          Winslow Memorial Hospital, Inc., doing business as Little Colorado Medical Center ("LCMC"), is a nonprofit corporation that operates a hospital in Winslow.  In 2003, LCMC hired Jeffrey Hamblen as its president and CEO.  Before he was hired, Hamblen misrepresented two aspects of his prior employment with another entity with which LCMC had a management services agreement.  First, Hamblen falsely told LCMC that

_____

* Justice Andrew W. Gould has recused himself from this case.  Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable Charles W. Gurtler, Jr., Presiding Judge of the Mohave County Superior Court, was designated to sit in this matter.

he would not receive any severance payments from the other entity. And second, Hamblen failed to disclose an amendment to the management services agreement that required LCMC to reimburse the other entity for the severance payments it made to Hamblen.

¶3  The 2013 Hamblen/LCMC employment contract included this arbitration provision:

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules . . . and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.
>
> . . . .
>
> All counterclaims that would be compulsory or permissive under Federal Rule of Civil Procedure 13(a) and (b) if the claim were filed in court shall be asserted in the arbitration and not otherwise.

¶4  In early 2014, after learning that Hamblen was receiving severance payments for which it was obligated to reimburse the other entity, LCMC placed Hamblen on administrative leave. Hamblen then notified LCMC that he was terminating the employment contract, alleging "good reason" under that agreement. LCMC in turn notified Hamblen that it was rescinding the employment contract or, alternatively, terminating him for cause. Hamblen then filed an arbitration demand with the American Arbitration Association, claiming that LCMC owed him severance pay under the contract on the ground that he had "good reason" to terminate it. Shortly thereafter, LCMC filed this action in superior court, alleging an unjust enrichment claim against Hamblen.

¶5  Hamblen moved to compel arbitration, arguing that LCMC's claim was subject to the employment contract's arbitration provision. LCMC opposed the motion on several grounds, including its contention that it was entitled to rescind the employment contract because of Hamblen's fraudulent misrepresentations and omissions. Despite that argument, the superior court granted the motion and stayed the case "until

mandatory arbitration under the contract is completed."

¶6            The parties then engaged in extensive prehearing disclosures and preparation for the arbitration.  LCMC asserted various counterclaims, including its claim for unjust enrichment.  (Although LCMC continued to pursue its unjust enrichment counterclaim at the arbitration hearing, it purportedly withdrew that claim in a post-hearing memorandum to the arbitrator.)  LCMC also sought rescission of the employment contract based on Hamblen's fraudulent misrepresentations and omissions.  LCMC did not, however, challenge the arbitration clause itself (as opposed to the entire employment contract).  The parties then participated in a multi-day arbitration hearing.

¶7            In October 2015, the arbitrator entered his award: (a) denying Hamblen's claim for severance pay because he terminated the agreement without "good reason"; and (b) ruling that "LCMC had grounds to rescind, and did rescind," the employment contract based on Hamblen's misrepresentations and omissions, which "abrogates the agreement and undoes it from the beginning."  The award also provided that "[t]his Final Award is in full settlement of all claims and counterclaims submitted to this Arbitration," and that "[a]ll claims not expressly granted herein are hereby denied."

¶8            Following the arbitration process, LCMC moved in superior court to confirm the final award.  LCMC also asked the court to lift the stay to allow LCMC to seek damages from Hamblen for various claims LCMC asserted, or could have asserted, in the arbitration, including its unjust enrichment claim that the court had previously ordered LCMC to arbitrate.  Hamblen did not oppose confirmation of the award, but did oppose the rest of LCMC's request and urged the court to enter a "simple judgment in LCMC's favor, with no monetary award for any party," consistent with the arbitration award's language.

¶9            In February 2016, the superior court entered judgment confirming the arbitration award but also lifting the stay and granting LCMC leave to amend its complaint.  The court acknowledged Hamblen's argument that, based on the arbitration proceedings and final award, LCMC should be foreclosed from reasserting its counterclaims in this action.  But the court rejected that argument, noting that the arbitrator found that LCMC had "grounds to and did rescind the LCMC/Hamblen Employment Agreement," which "abrogate[d] the agreement and undid it

4

from its very beginning." Consequently, the court ruled, Hamblen's request "to deny [LCMC's] right to a jury trial to prove damages" on its claims "is unreasonable as the contract was rescinded and undid [*sic*] from its very beginning."

¶10 Hamblen later moved for a new trial or, alternatively, to alter or amend the judgment under Arizona Rule of Civil Procedure 59. He argued that the arbitration award disposed of all claims between the parties—including LCMC's counterclaims—and that the court overstepped its authority under the Revised Uniform Arbitration Act ("RUAA"), A.R.S. § 12-3001 to -3029, by ruling that LCMC could reassert its counterclaims in this court action. LCMC, in turn, moved to amend its complaint to assert various claims against Hamblen.

¶11 In April 2016, the superior court denied Hamblen's motions, ruling that (1) both parties jointly requested the court to confirm the arbitration award, and that "the Court did in fact confirm the final arbitration award by written order"; and (2) because LCMC rescinded the employment contract, which "'undoes it from the beginning,'" LCMC was "entitled to a jury trial on its claims." By separate order, the court also granted LCMC's motion to amend its complaint.

¶12 The court of appeals declined jurisdiction of Hamblen's ensuing special action. We granted review because the case presents an issue of statewide importance and first impression before this Court— whether the separability doctrine applies to post-arbitration confirmation proceedings and precludes court litigation of arbitrable claims when the agreement's arbitration provision was not specifically challenged, even though the arbitrator finds grounds for rescinding the entire agreement. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

**II.**

¶13 Fifty years ago, the United States Supreme Court adopted what became known as the "separability" doctrine in the arbitration context. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967). The issue there was whether the federal court or an arbitrator should resolve a claim of fraud in the inducement of a contract providing for arbitration. *Id.* at 397-98, 402. Applying the applicable Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, the Court held that "if the claim is fraud in the

5

inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id.* at 403-04.

**¶14** More recently, the Supreme Court affirmed and applied the *Prima Paint* rule when the parties' contract contained an arbitration clause, but a party opposed arbitration and sought to litigate in federal court her claim of unconscionability under state law. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 65-66 (2010). Rejecting that position, the Court ruled that one may prevent arbitration of claims within the arbitration agreement's scope only if he or she "challenges specifically the validity of the agreement to arbitrate," rather than "challeng[ing] the contract as a whole," for example, based on its having been "fraudulently induced." *Id.* at 70 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). Accordingly, the Court held that "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.*

**¶15** Although this Court has not previously addressed the separability doctrine, our court of appeals has. Relying on *Prima Paint* and applicable statutes in Arizona's Uniform Arbitration Act, A.R.S. §§ 12-1501, -1502, the court of appeals embraced the doctrine over thirty years ago, ruling that "the arbitration clause is considered to be an agreement independent and separate from the principal contract." *U.S. Insulation, Inc. v. Hilro Constr. Co., Inc.*, 146 Ariz. 250, 253 (App. 1985). As that court observed,

> *except where the parties otherwise intend*—arbitration clauses as a matter of federal law are "separable" from the contracts in which they are embedded, and . . . where no claim is made that fraud was directed *to the arbitration clause itself*, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud.

*Id.* (quoting *Prima Paint*, 388 U.S. at 402) (second emphasis added in *U.S. Insulation*); *see also WB, The Building Co., LLC v. El Destino, LP* ("*WB*"), 227 Ariz. 302, 306-07 ¶ 11 (App. 2011) (noting as "well-established that arbitration agreements are severable from the rest of the contract, and

therefore, a court may only stay arbitration if there is a challenge to the arbitration clause itself"); *Stevens/Leinweber/Sullens, Inc. v. Holm Dev. & Mgmt., Inc.* ("*SLS*"), 165 Ariz. 25, 29 (App. 1990) (concluding that "the doctrine of separability is inherent in the language of A.R.S. § 12-1501").

**¶16**        We agree with the court of appeals that Arizona law codifies the separability doctrine and thus applies to all contracts governed by RUAA and/or the Uniform Act. "Read in conjunction, [A.R.S. §§ 12-1501 and 12-1502] embody the concept of separability endorsed" in *Prima Paint. U.S. Insulation*, 146 Ariz. at 253; *see also SLS*, 165 Ariz. at 28 n.3 (observing that § 12-1502(A) tracks the FAA, 9 U.S.C. § 4, on which *Prima Paint* relied "to limit a court's inquiry to a determination of whether an enforceable arbitration clause exists"); § 12-1501 (stating that arbitration agreements are "valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract"); § 12-1502(A) (limiting judicial inquiry to whether an arbitration agreement exists).

**¶17**        In addition, in 2010 Arizona adopted RUAA, which "governs an agreement to arbitrate made on or after January 1, 2011," including the agreement here. A.R.S. § 12-3003(A)(1).[1] Section 6(c) of that uniform act incorporates the separability doctrine, and Arizona adopted that language verbatim in RUAA. A.R.S. § 12-3006(C) ("An arbitrator shall decide . . . whether a contract containing a valid agreement to arbitrate is enforceable."). In addition, "[i]n applying and construing" RUAA, Arizona courts are to consider "the need to promote uniformity of the law with respect to its subject matter among states that enact it." A.R.S. § 12-3028. In short, RUAA further supports the separability doctrine.

## III.

**¶18**        Before addressing the parties' positions on the doctrine's application to this case, we make two points. First, RUAA specifically provides that beginning in January 2011, "this chapter shall not apply to an agreement to arbitrate any existing or subsequent controversy . . .

---

[1] RUAA, however, did not displace, and in some areas overlaps with, Arizona's Uniform Arbitration Act, A.R.S. §§ 12-1501 to -1518. *See* Bruce E. Meyerson, *Arizona Adopts the Revised Uniform Arbitration Act*, 43 Ariz. St. L.J. 481, 486 (2011) (Because "RUAA does not entirely replace Arizona's existing arbitration law," "Arizona now has two [sets of] arbitration statutes.").

[b]etween an employer and employee." A.R.S. § 12-3003(B)(1). Arizona's Uniform Arbitration Act contains a parallel provision. *See North Valley Emergency Specialists, L.L.C. v. Santana*, 208 Ariz. 301, 302 ¶ 1 (2004) (holding that A.R.S. § 12-1517 exempts from the Uniform Arbitration Act "all arbitration agreements between employers and employees," not only such agreements contained in collective bargaining contracts).

¶19        The parties did not waive those non-applicability provisions by entering into an employment agreement with an arbitration clause. But both parties acknowledge they voluntarily "opted in" to RUAA and the Uniform Act, and we accept the parties' agreement on this point. *See* A.R.S. §§ 12-3004(A) ("Except as otherwise provided in subsections B and C of this section, a party to an agreement to arbitrate or to an arbitration proceeding may waive, or the parties may vary the effect of, the requirements of this chapter to the extent permitted by law."); 12-3004(B), (C) (omitting agreements to arbitrate employment disputes from listing of conditionally waivable and non-waivable matters under RUAA). Therefore, for purposes of this case we deem RUAA and the Uniform Act applicable.

¶20        Second, even had the parties not waived the Arizona laws that exempt employment agreements from RUAA and the Uniform Act, "[t]he FAA preempts state law and governs all written arbitration agreements involving interstate commerce, making such agreements enforceable in both federal and state courts." *S. Cal. Edison Co. v. Peabody W. Coal Co.*, 194 Ariz. 47, 51 ¶ 13 (1999). And the FAA applies to arbitration agreements in employment contracts. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001); *see also Rent-A-Center*, 561 U.S. at 65-71 (applying separability doctrine to employment contract). Nonetheless, consistent with the parties' arguments, we limit our analysis and conclusion to Arizona law, without considering whether the agreement here falls within Congress's Commerce Clause powers and is thus covered by the FAA. *See generally Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265 (1995); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996).

### IV.

¶21        Hamblen argues that the separability doctrine applies to not only pre-arbitration challenges to motions to compel arbitration, but also post-arbitration proceedings. Proper application of the doctrine here, Hamblen asserts, leads to several conclusions. First, "an arbitrator's decision to rescind a contract containing an arbitration provision does not

impact the validity of the arbitration provision itself." Second, "once a trial court properly compels arbitration, the parties may not later litigate claims subject to the governing arbitration provision." Thus, Hamblen contends, the doctrine "precluded the superior court from permitting further litigation between the parties," particularly after the court confirmed the arbitration award.

¶22　　LCMC counters with two points, one procedural and the other substantive. First, it argues that Hamblen's current attempt to preclude superior court litigation of its various claims is premature, inasmuch as he never filed a motion for dismissal or summary judgment on those claims based on res judicata, merger, or otherwise. The superior court, therefore, had no "opportunity to consider or rule upon Hamblen's potential dispositive motion." We disagree. Hamblen clearly argued below that, as a matter of law, the confirmed arbitration award and separability doctrine foreclose further litigation of LCMC's claims, and the superior court clearly understood and rejected that argument. Hamblen's argument here, therefore, is not premature or procedurally deficient.

¶23　　Substantively, LCMC argues that the parties' dispute "is merely with respect to the *scope* of the effect of the [arbitration] award, which the parties agree is final and enforceable." Relying on *Clarke v. ASARCO, Inc.*, 123 Ariz. 587, 589 (1979), LCMC contends that "[t]he arbitrator's subject-matter jurisdiction is . . . 'limited in scope to issues raised by the arbitration agreement.'" We agree with that proposition, but it does not aid LCMC.

¶24　　In *Clarke*, this Court affirmed the superior court's order denying arbitration because the arbitration provision in the parties' contract was limited and governed only certain specified disputes, and the disputes involved in the case went "far beyond the scope of issues which the parties intended to submit to arbitration under the terms of the agreement to arbitrate." *Id.* As we observed, "[p]arties are only bound to arbitrate those issues which by clear language they have agreed to arbitrate," and in *Clarke* the parties' "contract could have required that all disputes arising out of the contract as a whole be subject to arbitration," but did not so state. *Id.*

¶25　　Here, in contrast, the Hamblen/LCMC employment contract broadly required arbitration of "[a]ny controversy or claim arising out of or relating to" the employment contract. That language is not limited to contract claims, but also encompasses any tort claims arising out of or

related to the parties' employment contract. LCMC does not dispute that the various tort claims it seeks to litigate under its amended complaint in superior court fall within that language. Nor does LCMC contest that its pending tort claims constitute permissive counterclaims in the arbitration and thus are covered by the agreement's mandate that all "compulsory or permissive" counterclaims "shall be asserted in the arbitration and not otherwise."

¶26        LCMC argues, however, that Hamblen's position exhibits "a fundamental misunderstanding of the separability doctrine." According to LCMC, under Hamblen's view "neither the court **nor** the arbitrator had any authority to decide LCMC's claim that the entire contract, including the arbitration clause, was invalid." But Hamblen has never challenged the arbitrator's exclusive authority to rule on LCMC's rescission claim, nor did Hamblen contest the superior court's confirmation of the arbitration award, which found LCMC's rescission supported and appropriate. Rather, Hamblen's argument is based on the fact that LCMC neither specifically challenged the validity of the arbitration provision nor sought to limit the scope of the arbitration proceeding or the arbitrable claims submitted there. Under those circumstances, he asserts, "the separability doctrine requires that once the superior court properly compelled arbitration" and later confirmed the arbitration award, "LCMC could never litigate any claims (permissive or compulsory) against Hamblen that existed at that time." And that is so, Hamblen contends, even when, as in this case, the arbitrator finds valid grounds to rescind the contract in which the arbitration agreement is found.

¶27        Without citing any authority, LCMC counters that "[o]nce the arbitrator had determined that LCMC had properly rescinded the **entire** contract," "the arbitrator no longer had any power to decide any other claims that were or could have been asserted by LCMC against Hamblen." But this argument is unsupported and inconsistent with the separability doctrine, the arbitration provision, the arbitration award, the superior court's confirmation of that award, RUAA, and arbitration-related policy considerations.

¶28        Unlike the party that opposed arbitration in *WB*, LCMC did not "challenge the validity of the arbitration agreement separately and distinctly from [its] challenge of the underlying contract." 227 Ariz. at 307 ¶ 13 & n.4; *see also SLS*, 165 Ariz. at 29 (affirming superior court's order denying motion to compel arbitration when party "challeng[ed] the validity

of the arbitration provision, but not the validity of the principal contract"). Had LCMC separately and specifically challenged, even on identical grounds, "both [the] arbitration agreement and the underlying [employment] contract," *WB*, 227 Ariz. at 307 ¶ 13, the superior court conceivably could have found the arbitration clause to be unenforceable, denied Hamblen's motion to compel arbitration, retained jurisdiction, and ruled on the merits of all claims. *Cf. Prima Paint*, 388 U.S. at 404 ("[I]n passing upon a[n] . . . application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate."). But that is not what happened here.

¶**29** Under the separability doctrine, therefore, the superior court properly compelled arbitration of all claims relating to the parties' employment agreement, including LCMC's claim for rescission. *Cf. Buckeye Check Cashing*, 546 U.S. at 445-46 (stating that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance"); *Saint Agnes Medical Center v. PacifiCare of California*, 82 P.3d 727, 735 (Cal. 2003) ("[T]he central rationale of *Prima Paint* was that an arbitration clause is separable from other portions of a contract, such that fraud in the inducement relating to other contractual terms does not render an arbitration clause unenforceable, even when such fraud might justify rescission of the contract as a whole."). Under these circumstances, we agree with Hamblen that the doctrine should apply here in the post-arbitration context.

¶**30** Once the parties' dispute was correctly referred to arbitration, LCMC was required under their agreement to present in that proceeding all counterclaims, permissive or otherwise, that arose out of or related to the Hamblin/LCMC employment agreement. Consistent with that requirement, LCMC identified numerous claims against Hamblen in its arbitration disclosure statement. That LCMC chose to not present certain claims does not justify its later asserting them in its amended complaint in superior court. And although the arbitrator found valid grounds for LCMC's rescission of the employment contract, that ruling did not vitiate the unchallenged arbitration clause in the parties' contract or preclude the arbitrator from also deciding all of the parties' employment related claims. *Cf. Verma v. Stuhr*, 223 Ariz. 144, 158 ¶ 73 (App. 2009) (although "rescission is meant to restore the parties to their pre-contract status," "a contract may be partially rescinded when the contract is divisible or severable"). Indeed,

the arbitrator stated that the final award was "in full settlement of all claims and counterclaims submitted" to arbitration and denied "[a]ll claims not expressly granted" in the award.

¶31 The superior court's confirmation of that award was unqualified and unchallenged. That confirmation was in keeping with RUAA, which strictly limits the superior court's options after the arbitration process is complete. *See* A.R.S. § 12-3022 (requiring a court to confirm an arbitration award "unless the award is modified or corrected . . . or is vacated," actions that were neither requested nor appropriate here). In view of the confirmed arbitration award, neither RUAA nor any other authority permitted further litigation, via LCMC's amended complaint that the superior court authorized, of arbitrable claims that could and should have been pursued in the arbitration. As Hamblen points out, permitting a party to later litigate arbitrable claims in court, after unlimited arbitration proceedings have concluded and the arbitration award has been confirmed, "would result in tremendous waste and discourage parties from entering into arbitration agreements."

¶32 Finally, our conclusion advances the policies underlying arbitration and the separability doctrine. *See Prima Paint*, 388 U.S. at 404 (noting that the separability doctrine "not only honor[s] the plain meaning of the [FAA] but also the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts"). As discussed above, when parties contractually agree to arbitrate any disputes and the arbitration provision is not specifically and separately challenged, the applicable United States Supreme Court and Arizona cases require that a general challenge to the validity of the contract be submitted to arbitration. Although those cases do not squarely address what happens "next" if the arbitrator concludes that the contract as a whole—including its arbitration clause—is unenforceable or rescinded, the underlying purpose and policy of the separability doctrine support Hamblen's position.

¶33 Because the separability doctrine presumes that the arbitration clause is separable from the overall contract, where, as here, the parties agree to a broad arbitration clause that is not specifically challenged, that provision will apply even if the arbitrator finds that the overall contract is void or voidable. And this is so unless (1) the parties have provided otherwise in their contract; (2) the parties stipulate to a bifurcated procedure in which they may later litigate claims in court if the arbitrator

finds the entire contract void or voidable; or (3) the party opposing arbitration establishes that the clause itself is unenforceable. Thus, the separability doctrine operates as a presumption that the parties intend an arbitration clause to be severable from the rest of the agreement, but—consistent with the notion that the scope of contractual arbitration turns on the parties' agreement—the parties can themselves provide otherwise.

¶34 This construct also aligns with the general underlying goals of arbitration. "The primary purpose of arbitration is to provide an alternative to litigation so that the parties may 'obtain an inexpensive and speedy final disposition of the matter.'" *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co., Inc.*, 180 Ariz. 148, 152 (1994) (quoting *Smitty's Super-Valu, Inc. v. Pasqualetti*, 22 Ariz. App. 178, 182 (1974)). When parties have agreed to submit their claims to arbitration, "the parties, having chosen a different tribunal, may not reinstate judicial tribunals to resolve the controversy." *Id.*; *see also S. Cal. Edison Co.*, 194 Ariz. at 52 ¶ 17 (recognizing purpose of arbitration as affording "prompt, efficient, and inexpensive dispute resolution"); *SLS*, 165 Ariz. at 29 (recognizing "the strong public policy favoring arbitration as the preferred means of dispute resolution"). Litigating anew LCMC's various claims against Hamblen, as LCMC urges and the superior court sanctioned, would undercut those fundamental policies, result in considerable duplication of effort, and require additional time and expense, all after costly, time-consuming arbitration proceedings to which the parties agreed and the court ordered. Accordingly, we hold that LCMC is barred from litigating its claims against Hamblen in superior court.

## V.

¶35 For the reasons stated, we reverse the superior court's judgments granting LCMC's motion to amend its complaint and allowing LCMC to litigate its various claims against Hamblen in this action. We remand the case to the superior court with directions to dismiss the amended complaint. In our discretion, we deny Hamblen's request for an award of attorney fees under A.R.S. § 12-341.01 and RUAA, A.R.S. § 12-3025(C).