IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

MICHELE GRAY, *Plaintiff/Appellant*,

*v.*

GC SERVICES, LP, *Defendant/Appellee*.

No. 1 CA-CV 21-0533
FILED 12-14-2023

Appeal from the Superior Court in Maricopa County
No. CV 2021-002228
The Honorable Bradley H. Astrowsky, Judge

**VACATED AND REMANDED**

APPEARANCES

Michele Gray, Rensselaer, NY
*Plaintiff/Appellant*

Hassett Glasser PC, Phoenix
By Myles P. Hassett, Jamie A. Glasser, David R. Seidman
*Counsel for Defendant/Appellee*

_____

**OPINION**

Judge Michael J. Brown delivered the opinion of the Court, in which Presiding Judge Maria Elena Cruz and Judge Samuel A. Thumma joined.

_____

**B R O W N**, Judge:

¶1          Michele Gray appeals the superior court's order dismissing her employment-related claims with prejudice, asserting the court erred by failing to order arbitration under the parties' employment agreement. We hold that the parties explicitly agreed to resolve all disputes arising out of Gray's employment through arbitration, including whether Gray's current lawsuit is barred by claim preclusion. Thus, we vacate the dismissal order and remand to allow the parties to participate in arbitration to address preclusion and other issues in the exclusive forum they selected to resolve their dispute.

**BACKGROUND**

¶2          In June 2019, GC Services, LP ("GCS") hired Gray as a home-based customer service representative. As a condition of employment, Gray signed a "Mutual Agreement for Dispute Resolution" ("Agreement") providing for "mutually binding" arbitration. The Agreement states that it is governed by the Federal Arbitration Act ("FAA") and "shall survive the termination of [Gray's] employment" by GCS.[1]

¶3          The employment relationship soured, and in January 2020, Gray sent GCS a resignation letter, which GCS immediately accepted. Several months later, Gray sued GCS in the United States District Court for the Northern District of New York, alleging GCS wrongfully terminated her employment in violation of several federal and state statutes. In February 2021, Gray sued GCS in Maricopa County Superior Court, raising substantially the same claims she had alleged in the federal lawsuit, along with claims based on state law. Meanwhile, Gray filed a nearly identical suit in New York state court. Regardless of the ultimate disposition of the

_____

[1]          The Agreement also states that "[t]o the extent any dispute requires the application of state law, the parties agree only the laws of the State of Texas shall apply." Neither party, however, has argued Texas law is relevant in resolving the issues we address in this appeal.

suits Gray filed in New York, they have no bearing on the outcome of this appeal.

¶4        In the case before us, GCS filed a combined motion to compel arbitration and motion to dismiss.  GCS stated it was "seeking to compel any cognizable claims to arbitration pursuant to a valid and binding arbitration agreement between the parties," which required them "to arbitrate all disputes arising out of or related to [Gray's] employment or the termination thereof."  GCS qualified its motion to compel, however, asserting there was nothing the superior court could compel because Gray's complaint failed to state any cognizable claim and thus dismissal was appropriate under Arizona Rule of Civil Procedure ("Rule") 12(b)(6).  GCS added that, even if a "cognizable claim" existed, Gray's lawsuit would be barred by claim preclusion.[2]

¶5        The superior court dismissed Gray's complaint with prejudice, explaining it was unnecessary to decide the "arbitration issue" because Gray failed to state a claim under any of the grounds she had alleged, and claim preclusion applied.  After the court issued a final judgment, Gray filed a timely notice of appeal.

## DISCUSSION

### A.        Appellate Jurisdiction

¶6        GCS asks that we dismiss Gray's appeal, asserting the substantive issues raised in Gray's opening brief go beyond her notice of appeal.  "As a general rule, our review is limited to matters designated in the notice of appeal or cross-appeal." *Desert Palm Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, 576, ¶ 15 (App. 2015).  Whether the notice of appeal is sufficient is a question of jurisdiction, and "[w]e have an independent duty to determine whether we have jurisdiction over an appeal." *Id.*

¶7        Although Gray's notice of appeal included an extraneous comment referencing her amended complaint, the notice plainly stated she was appealing the superior court's dismissal order.  Thus, she substantially complied with our appellate rules by identifying the correct order she wished to appeal.  *See* ARCAP 8(c)(3) (stating that a notice of appeal must

---

[2]        GCS cited Arizona's arbitration statutes and the FAA as the basis for its motion to compel arbitration.  Because the parties expressly agreed the Agreement is governed by the FAA, we need not decide the applicability of Arizona's arbitration statutes.

"[d]esignate the judgment or portion of the judgment from which the party is appealing"). Moreover, GCS has made no argument it was misled as to which order Gray intended to appeal or was otherwise prejudiced. *See Hill v. City of Phoenix*, 193 Ariz. 570, 572–73, ¶ 10 (1999). We have appellate jurisdiction under A.R.S. § 12-2101(A)(1) to decide issues relating to the dismissal order.

### B. Waiver

**¶8** GCS argues that Gray waived all arguments on appeal because her opening brief does not comply with ARCAP 13. Among other things, GCS asserts that Gray failed to include a statement of the case, her statement of the facts is incoherent, she did not provide citations to the law or record, and her arguments are a "mishmash of perceived grievances." *See Ramos v. Nichols*, 252 Ariz. 519, 522, ¶ 8 (App. 2022) (explaining that an appellant who fails to make a reasonable effort to comply with the rules may waive issues on appeal due to noncompliance). Although the opening brief is deficient in some respects, we decline to apply waiver because Gray has adequately challenged the court's decision to dismiss the case on the merits without first considering whether her claims must be resolved through arbitration. *See id.*

### C. Motion to Compel Arbitration

**¶9** Turning to the substance of her appeal, Gray argues the superior court erred when it failed to compel arbitration pursuant to the Agreement. We review de novo the superior court's decision on whether to compel arbitration. *Allstate Prop. & Cas. Ins. Co. v. Watts Water Techs., Inc.*, 244 Ariz. 253, 256, ¶ 9 (App. 2018). When addressing whether the parties agreed to arbitrate a certain matter, courts generally apply state-law principles governing contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Once it is determined that the FAA applies to a dispute, federal substantive law regarding arbitrability controls. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

**¶10** In addressing "whether a dispute is subject to arbitration governed by the FAA, a court is limited to deciding whether an arbitration agreement exists and whether it encompasses the dispute." *United Behav. Health v. Maricopa Integrated Health Sys.*, 240 Ariz. 118, 126, ¶ 28 (2016). (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms."

*Chiron Corp.*, 207 F.3d at 1130.  The question here is whether the Agreement encompasses the disputes between GCS and Gray.

¶11          Section 1 of the Agreement ("All Disputes Must be Arbitrated") states in part:

> Claims subject to arbitration include all legally cognizable claims in the broadest context and include, but are not limited to, any dispute about the interpretation, applicability, validity, existence, enforcement, or extent of arbitrability of or under this Agreement . . . This includes, by way of non-exhaustive illustration only, any claim of employment discrimination in any alleged form . . . or any other claim, whether contractual, common-law, statutory, or regulatory arising out of, or in any way related to, Individual's application for employment with and/or employment with Company, the termination thereof, this Agreement, or any other matter incident or in any manner related thereto.

¶12          In interpreting a contract, we consider the language used according to its plain and ordinary meaning, viewed in context of the entire contract, unless "it can be shown that the parties intended a special meaning." *Terrell v. Torres*, 248 Ariz. 47, 50, ¶ 14 (2020).  We also "attempt to reconcile and give effect to all terms of the contract to avoid any term being rendered superfluous." *Id.*

¶13          "Absent some ambiguity in the agreement, . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *Equal Emp. Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).  Ambiguities in an agreement "should be resolved in favor of arbitration," but courts will not override parties' intent, "or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Id.* at 294; *see also Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (noting that the federal policy favoring arbitration is not intended to "favor arbitration over litigation[,]" but rather to "hold a party to its arbitration contract just as the court would to any other [contract]").  And except in limited circumstances not applicable here, arbitration agreements in employment contracts are valid and enforceable. *See Cir. City Stores v. Adams*, 532 U.S. 105, 119 (2001); *see also Hamblen v. Hatch*, 242 Ariz. 483, 488, ¶ 20 (2017).

### 1.     Legally Cognizable Claims

¶14     GCS argues the FAA does not apply because its dispute with Gray is not a "legally cognizable claim" as that phrase is used in the Agreement.  But that argument overlooks the Agreement's expansive language requiring arbitration and the FAA's broad applicability to arbitration agreements.  *See* 9 U.S.C. § 2 (establishing the validity and enforceability of agreements to arbitrate disputes arising out of contract "save upon such grounds as exist at law or in equity for the revocation of any contract"); *see also S. Cal. Edison Co. v. Peabody W. Coal Co.*, 194 Ariz. 47, 51, ¶ 13 (1999) ("The FAA preempts state law and governs all written arbitration agreements involving interstate commerce, making such agreements enforceable in both federal and state courts.").

¶15     According to GCS, the phrase "legally cognizable claims" limits the scope of the Agreement because a claim barred by claim preclusion is not cognizable.  That argument, however, presupposes a specific resolution of a legal issue, and the question here is whether that legal issue should be resolved in arbitration.  As GCS argued in the superior court, the parties entered into an enforceable agreement, which contained a "mutual, broad, and unambiguous arbitration provision" mandating arbitration of any claim arising out of Gray's employment.  GCS also asserted "the plain terms of the arbitration clause" meant that Gray's claims must be arbitrated.  On appeal, GCS seeks to retreat from those assertions, arguing its motion to compel was merely an alternative theory presented to the superior court, and in any event, it only moved to compel arbitration of any "cognizable claims."  GCS now takes the view that, because Gray's *claims* are not cognizable, the Agreement is essentially irrelevant based on application of claim preclusion.  For several reasons, we disagree.

¶16     First, GCS does not address why Gray's suit does not fit squarely within the phrase "all legally cognizable disputes."  *See* Agreement, § 1 (confirming the parties' intent "that all legally cognizable disputes between them that cannot be resolved to the parties' satisfaction through use of the Company's personnel policies, must be resolved by final and binding arbitration" and stating that the Agreement "shall be construed as broadly as legally possible and shall apply to any and all legally cognizable disputes between" the parties).  We presume the parties meant something different by using "legally cognizable disputes" in certain places in the Agreement and "legally cognizable claims" in others.  *See Terrell*, 248 Ariz. at 50, ¶ 14 (recognizing that courts "attempt to reconcile and give effect to all terms of the contract to avoid any term being rendered superfluous").  Gray has alleged she was wrongfully terminated by GCS,

and GCS provides no authority showing her allegation does not constitute a legally cognizable *dispute* between them, even if it ultimately might fail.

¶17　　Second, whether analyzed as a claim or a dispute, the Agreement contemplates that any claim or dispute arising out of Gray's employment must be resolved through arbitration.  And as our supreme court has recognized, trial courts "must carefully avoid deciding the merits of an arbitrable claim or any defenses to it." *United Behav. Health*, 240 Ariz. at 126, ¶ 28; *see also U.S. Fire Ins. Co. v. Nat'l Gypsum Co.*, 101 F.3d 813, 817 (2d Cir. 1996) (recognizing that "a defense based on the issue-preclusive effect of the prior judgment is part of the dispute on the merits"); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991) (explaining that a court's "role is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator").

¶18　　Third, GCS's argument ignores the Agreement's broad language requiring arbitration.  As noted, § 1 says that matters to be arbitrated shall "include all legally cognizable claims in the broadest context . . . [including] any claim arising under any federal, state, or local statute, regulation, or ordinance, any alleged contract, or under the common law."  That section also states that "*[t]he parties jointly agree neither may file any lawsuit to resolve any dispute between them.*"  (Emphasis added.)  These provisions leave no doubt what the parties agreed to and compels the conclusion that Gray's claims must be arbitrated.  GCS's reliance on *Charlton v. Estate of Charlton*, 48 B.R. 1012 (D. Ariz. 1985), is without merit because that case does not involve any issues relating to arbitration or the FAA.

¶19　　Fourth, we reject GCS's attempt to narrow the scope of the Agreement by focusing only on the term "cognizable."  Although Gray's amended complaint includes discussion of many irrelevant matters, regardless of merit, her claims are nonetheless capable of being heard and determined by a judicial officer.  Given the language of the Agreement, Gray's claims are subject to arbitration.  *See* Agreement, § 6 (stating that in any dispute, "the arbitrator may grant any relief, legal or equitable, interim or final, which could be granted by a court of competent jurisdiction"); *id.*, § 1 (stating that the Agreement applies to any claim, "whether contractual, common-law, statutory, or regulatory arising out of, or in any way related to, [Gray's] . . . employment with [GCS] . . . or any other matter incident or in any manner related thereto").

¶20 Finally, § 2 of the Agreement provides additional support for our analysis. It states that the Judicial Arbitration and Mediation Services ("JAMS") rules and procedures for employment matters "applicable to the dispute" apply. Section 2 also says that any dispute between Gray and GCS, including "the interpretation, applicability, validity, existence, enforcement, or extent of arbitrability of or under this Agreement, shall be resolved exclusively by final and binding arbitration administered by JAMS." Inclusion of this language further confirms the parties' Agreement that all disputes between them will be resolved through arbitration, including whether claim preclusion bars Gray's claims.

## 2. Existing Controversy

¶21 The FAA states that agreements to arbitrate "an *existing controversy* arising out of such a contract" are valid and enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). GCS contends there is no "existing controversy" here, meaning the FAA does not apply to this dispute, because Gray's claims are barred by claim preclusion.

¶22 GCS relies again on *Charlton*. As noted, that case did not involve arbitration; rather, the bankruptcy court held that the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, only applied to "cases of actual controversy," which did not exist if the issues were barred by claim preclusion. 48 B.R. at 1014. Unlike the FAA, the DJA gives judges discretion in deciding what matters are appropriate for a declaratory action. *Compare* 28 U.S.C. § 2201(a) ("[A]ny court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration") (emphasis added), *with* 9 U.S.C. § 3 (When a court is satisfied that a matter is subject to arbitration, the court "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement") (emphasis added). Nothing in *Charlton* suggests its reasoning extends to arbitration agreements governed by the FAA.

## 3. Mootness

¶23 GCS also argues the arbitration issue became moot when the superior court determined Gray failed to state a claim for relief. That argument fails because the court was limited to "deciding whether an arbitration agreement exists and whether it encompasse[d] the dispute" and should have avoided deciding the merits of Gray's claims. *See United Behav. Health*, 240 Ariz. at 126, ¶ 28; *see also AT&T Techs., Inc., v. Commc'ns*

*Workers of Am.*, 475 U.S. 643, 649 (1986) (recognizing "that, in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims"). Under these circumstances, the court lacked the authority to dismiss Gray's complaint for failure to state a claim or based on claim preclusion because those issues must be resolved through arbitration.

### 4.    Full Faith and Credit

**¶24**        Finally, GCS relies on the Full Faith and Credit Clause to argue that the resolution of its motion to compel arbitration and motion to dismiss the complaint does not depend on the FAA. *See* U.S. Const. art. IV, § 1 ("Full Faith and Credit shall be given in each State to the . . . judicial Proceedings of every other State."). Thus, each State must generally give "a judgment at least the [preclusive] effect which the judgment would be accorded in the State which rendered it." *Durfee v. Duke*, 375 U.S. 106, 109 (1963). GCS argues that because Gray's claims were resolved in New York litigation, if she tried to collaterally attack that resolution in a subsequent proceeding in New York, she would be barred by claim preclusion. Therefore, GCS concludes Arizona courts must accord the same preclusive effect. Again, GCS fails to acknowledge the language of the Agreement. All disputes, including whether preclusion doctrines apply, are questions for the arbitrator.

### CONCLUSION

**¶25**        We vacate the superior court's order dismissing Gray's claims because they are subject to binding arbitration, which means her sole option moving forward is to litigate those claims through arbitration. On remand the superior court shall issue appropriate orders to implement our decision. *See* 9 U.S.C. § 3. Because GCS has not prevailed on appeal, we deny its request for attorneys' fees and costs under A.R.S. §§ 12-341.01 and -349. We also deny GCS's request for sanctions under ARCAP 25, as nothing in Gray's briefing merits sanctions. Gray is awarded taxable costs subject to compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA